471 P.2d 870

**STATE of Utah, Plaintiff and Respondent,**

v.

**Roy Lee POE, Defendant and Appellant.**

No. 11836.

Supreme Court of Utah.

July 7, 1970.

---

6. 58 A.L.R.2d 784 (1958); Westerlund v. Black Bear Mining Co., 203 F. 599 (8th Cir. 1913).

Cline, Jackson & Jackson, Joseph E. Jackson, Milford, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Chief Asst. Atty. Gen., Darwin C. Hansen, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

TUCKETT, Justice.

The defendant, Roy Lee Poe, was tried in the District Court of Iron County for the offense of murder in the first degree which resulted in a verdict of guilty and a sentence to life imprisonment.

The defendant was originally tried in the District Court of Washington County, and after the jury returned a verdict of murder in the first degree without recommendation, the court pronounced a mandatory death sentence. The defendant appealed to this court after his first trial, and this court reversed and remanded the case for a new trial.[1] Thereafter the place of trial was changed to Iron County and the proceedings we are here concerned with ensued. At the conclusion of the trial in Iron County the jury found the defendant guilty of murder in the first degree with a recommendation for leniency and the court sentenced the defendant to life imprisonment. From the verdict and judgment of the court defendant has again appealed to this court.

The defendant was charged by the Information with the murder of one Kenneth Hall, a long-time resident of St. George, Utah. On November 9, 1965, the body of Kenneth Hall was found at his home with two gunshot wounds in the head. The peace officers of St. George and Washington County commenced an investigation into the death of Hall and the apprehension of the perpetrator of the crime. The investigations resulted in the arrest of the defendant and with his being charged with murder in the first degree. While no eyewitness was produced by the State to show the defendant's connection with the crime, there was sufficient evidence of a circumstantial nature to support the jury's finding that the defendant was in fact guilty. The defendant does not here contend that the evidence was insufficient to show his guilt beyond a reasonable doubt.

The defendant does contend that a number of errors were committed during the course of the proceedings in the court below, the cumulative effect of which prevented him from having a fair trial. The defendant asks this court to reverse and to remand the case for a new trial.

1. 21 Utah 2d 113, 441 P.2d 512.

The first of the defendant's claimed errors stems from refusal of the trial court to inquire of each prospective juror as to his church affiliation and whether or not by virtue of his religious training he had developed a moral or religious attitude regarding the death penalty. While the court did not inquire as to the church affiliation of each prospective juror, the court did inquire of the prospective jurors as to any religious or moral scruples they had regarding the death penalty. We are of the opinion that the court's refusal to make further inquiry into the church affiliation of the members of the jury was not erroneous, and this is especially true in view of the fact that the verdict of the jury did not make the death penalty mandatory.

Defendant makes the further claim that the court should have excluded other members of the panel for cause. A careful examination of the record indicates that the court was meticulous in striking the names of all those prospective jurors whose answers to questions indicated that they would be prejudiced in any way or that they could not render a fair and impartial verdict.

The defendant also urges that the court was in error in directing the sheriff to summon additional jurors on an open venire. The record discloses that during the proceedings all of the names had been drawn from the box in which the names of jurors for that term of court had been deposited, and that one further juror was required to complete the panel before each side was permitted to exercise its peremptory challenges. In addition to the regular panel the court deemed it advisable to select an alternate juror. The court directed the sheriff to summon six additional jurors from people readily available at the county seat. While the summoning of the six additional prospective jurors by an open venire did not strictly comply with the provisions of Section 78–46–23, U.C.A.1953, we are unable to see how the rights of the defendant were prejudicially affected, inasmuch as the only juror selected from those summoned on the open venire was that of the alternate juror, and he did not take part in the deliberations of the jury.[2]

The defendant also contends that the court committed error in permitting the testimony of witnesses who testified in the prior trial of these proceedings to be read into the record of the second trial. During the proceedings the court permitted testimony of Lewis P. Lagana and Mary Miner, who had testified at the prior trial, to be read into the record. The defendant claims that the prosecution had failed to lay a proper foundation for the introduction of that testimony, and that the foundation was insufficient to show that the witnesses in

---

2. State v. Cluff, 48 Utah 102, 158 P. 701.

question were deceased or beyond the jurisdiction of the court as required by the provisions of Section 77–44–3, U.C.A.1953. At the time of the prior trial both Lewis P. Lagana and Mary Miner were residents of the state of Nevada. The record before us discloses that a representative of the State's Attorney General's office, as well as the Sheriff of Washington County, conducted separate investigations designed to find the witnesses mentioned or to learn their whereabouts prior to the time of trial. A deputy of Clark County, Nevada, also made an effort to locate the witnesses or to discover their whereabouts.

The investigations as above set forth tended to show that the witnesses in question had left the state of Nevada and had taken up residences in states other than Utah or Nevada. In addition to the investigations above mentioned the Sheriff of Washington County also contacted the sheriffs of all of the other counties within the state of Utah with a view to locating the witnesses if they were within the State. All of these investigations failed to locate these witnesses within the jurisdiction of the court, and we must conclude that the record supports the trial court's determination that a sufficient foundation had been laid.

■ As a third claim of error the defendant claims that the court abused its discretion by admitting into evidence gruesome and gory pictures of the deceased taken shortly after the discovery of his body. At the first trial in these proceedings certain colored photographs were admitted in evidence which this court deemed to be prejudicial, inasmuch as their inflammatory nature seemed to outweigh their probative value and which may have influenced the jury at the first trial to return a verdict making the death penalty mandatory.[3] However, the record of the second trial discloses that only two black and white photographs were introduced and which would tend to demonstrate that the decedent was asleep in bed at the time the fatal gunshot wounds were inflicted. We are of the opinion that the exhibits were properly admitted for the purpose of showing the nature and degree of the homicide here involved.

■ Finally, the defendant argues that the court erred in submitting the case to the jury at a late hour on the final day of the trial rather than having the jury sequestered until the following day. The record shows that the jury retired to deliberate upon their verdict at the hour of 7:38 p. m. The record discloses that during the last day of the trial the court was in recess for

3. State v. Poe, 21 Utah 2d 113, 441 P.2d 512; State v. Renzo, 21 Utah 2d 205, 443 P.2d 392.

extended periods during which time the jury was excused from the courtroom. The record shows that the jury deliberated until approximately 2:45 a. m. the following day, at which time the jury asked for further instructions by the court on certain matters of law, and the jury was thereupon returned to the courtroom and the court delivered further instructions. The record does not disclose that the jury at any time during the period of their deliberations indicated the desire for a postponement or made any indication to the court that they were too tired to proceed. Defendant makes no showing that the lateness of the hour when the jury commenced their deliberations tended in any way to affect his rights to a fair trial, or that the verdict may have been otherwise had the jury been sequestered.

A careful examination of the record fails to disclose errors prejudicial to the defendant and which would require a new trial. The judgment of the court below is affirmed.

CROCKETT, C. J., and CALLISTER, HENRIOD and ELLET, JJ.