501 P.2d 632

**STATE of Utah, Plaintiff and Respondent,**

v.

**Walter Parnell ROSS, Defendant and Appellant.**

**No. 12545.**

Supreme Court of Utah.

Sept. 29, 1972.

D. Gilbert Athay, Salt Lake City, of Salt Lake City Legal Defender Assn., for defendant-appellant.

Vernon B. Romney, Atty. Gen., David S. Young and David R. Irvine, Asst. Attys. Gen., Salt Lake City, for plaintiff-respondent.

CALLISTER, Chief Justice:

Defendant appeals from his conviction by a jury of the crime of second-degree murder. His primary assertion of error is predicated on the ground that there was insufficient evidence to support a finding of malice aforethought, a requisite element of second-degree murder.

In the early morning hours of June 20, 1970, defendant admittedly killed his wife, Juanita, but he contends that it was upon a sudden quarrel or in the heat of passion, i. e., the crime of voluntary manslaughter, Sec. 76–30–5(1), U.C.A.1953.

Defendant testified that in the afternoon prior to her death, his wife and he ate a late lunch and then attended a movie. They returned to their apartment, and she informed him that she had an appointment with a customer; she was a prostitute. He protested mildly because the Welfare Department had taken custody of their child, and upon consultation they were informed by a caseworker that they had a good chance of regaining custody if the wife would terminate her activities in pros-

titution and drug use, and would establish a home for the family. Apparently, defendant accepted his wife's explanation that she needed money to purchase new clothes, and he departed from the premises. He returned to the apartment, according to his testimony, about 2:30 a. m. and discovered a spoon and cotton, which indicated to him that his wife had used the money from her customer for narcotics. He became furious and stormed into the bedroom, demanding to know the location of her "dope kit." She denied the use of narcotics and the existence of a kit. Defendant claims that he slapped her around and threatened to hit her with a leg broken off a coffee table; upon her repeated denials, he ultimately struck her in the head with the leg. She, subsequently, informed him that her "dope kit" was concealed in a dust pan in the bathroom. He ceased his attack and realized that she was injured; he went to summon help but upon arrival of the police, she was dead. Defendant characterized his encounter with his wife as an argument accompanied by scuffling all over the place; however, he did admit that he hit her with his fists. Defendant, at the time of the incident, weighed 220 pounds and was 5 feet 11½ inches tall. His wife weighed 90 to 95 pounds and was 5 feet tall.

The physician, who performed an autopsy, testified as to his findings; he described multiple abrasions, contusions and lacerations which extended over the entire body. There were 500 c.c. of blood (approximately ⅛ of her total blood) in the wife's abdominal cavity from a fractured 10th rib and lacerations of the liver and other soft tissue. He testified that the cause of death was a combination of loss of blood from the torn liver and asphyxiation by strangulation.

During the course of the trial, defendant made a motion to dismiss the charge of second-degree murder and to submit the cause to the jury on the lesser offenses of voluntary and involuntary manslaughter. Defendant asserted that an analysis of the evidence indicated a sudden quarrel and that the beating was administered in the heat of passion, that upon his realization of his actions, he immediately summoned assistance. These facts he urged negate the existence of malice. Defendant proffered the same argument in a motion for a new trial. The trial court responded that the evidence indicated a substantial physical beating, whether it was by fists or club or both, prior to death, followed by strangulation, which was the probable cause of death. The trial court concluded that from this evidence the jury might find a deliberate intention, unlawfully, to take life; and, therefore, the court denied the motion. Defendant appeals from this ruling.

"Murder" is defined as the unlawful killing of a human being with malice aforethought, Sec. 76-30-1, U.C.A.1953. Sec.

76–30–2, U.C.A.1953, provides that such malice is express when there is manifested a deliberate intention unlawfully to take the life of a fellow creature. Manslaughter is the unlawful killing of a human being without malice; it is voluntary upon a sudden quarrel or in the heat of passion, Sec. 76–30–5(1), U.C.A.1953.

In People v. Catton[1] this court stated: . . .It is very difficult, in many cases, to distinguish manslaughter from murder. The act that caused death may have been wilful, but death may not have been intended. The intention to kill may have been formed, and life taken, during or soon after an angry quarrel, or amid or immediately after violence and excitement. In order to determine whether the accused in any given case acted from reason or passion, the provocation, the weapon used, (if any) the preparation for the act, his expressions, and all the circumstances must be considered; and although it appears that the act proceeded to some extent from malice, upon reflection and calculation, and to some extent from passion, that will be held to be the cause which had the preponderating influence. Passion, to some extent, almost always influences the slayer, when the fatal wound is given during or soon after a quarrel or a fight; and, conversely, malice, to some extent, influences the party killing in either case. But the law charges the act to malice or passion as the one or the other is found to be the preponderating cause of the act. . . . The passion must be such as is sometimes called "irresistible;" yet it is too strong to say that the reason of the party should be dethroned; or he should act in a whirlwind of passion. There must be sudden passion, upon reasonable provocation, to negative the idea of malice; and the passion must proceed from what the law accepts as an adequate cause; else it will not reduce the felonious killing to manslaughter. . . .

▮ One aspect which defendant has failed to discuss is the question of provocation. Heat of passion will not reduce a homicide to manslaughter unless it was engendered by adequate provocation. If the element of provocation is either lacking or legally insufficient, the offense is murder.[2] In a determination of whether the element of provocation has displaced the element of malice aforethought and thus effectuated a reduction of the offense, the fundamental inquiry is whether or not the defendant's reason was, at the time of his act, so disturbed or obscured by some passion—not necessarily fear and never the passion for

1. 5 Utah 451, 466, 16 P. 902 (1888).

2. 1 Wharton's Criminal Law and Procedure (Anderson), § 276 p. 586.

revenge—to such an extent as would render ordinary men of average disposition liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.[3]

Where the defendant asserts that he acted in the heat of passion, two variables must be weighed in relation to each other—the degree of provocation and the measures employed by the defendant in response to it. These factors must be weighed by the jury, unless in a particular case there is no reasonable basis in the evidence to justify the submission of this issue by the court to the jury.

. . . "Heat of passion" and "malice" are at best very vague terms which must be applied in the light of the legislative purpose in differentiating second degree murder and manslaughter. The differentiation apparently was made "out of the indulgence of the frailty of human nature," recognizing that the provocation in some cases may be so great as to warrant a penalty less than that prescribed for murder. In deciding whether the defendant should be given the benefit of this recognition of the "frailty of human nature," his conduct must be measured against the standards of the community. The jury is best equipped to apply that standard. The trial court properly submitted to the jury the question of defendant's malice.[4]

In the instant action, the trial court did not err by denying defendant's motion to dismiss the charge of second-degree murder. There was substantial evidence from which the jury could reasonably infer a purpose and design on defendant's part to take unlawfully the life of his wife. By his own account, defendant's "heat of passion" was sustained from approximately 2:30 a. m. to 5:00 a. m. The cause of death by strangulation contradicts his story that his wife was alive when he departed to call an ambulance. The magnitude of his wife's injuries seriously undermines defendant's account of the alleged altercation. Finally the alleged provocation, her refusal to divulge the location of her "dope kit" appears insufficient or so the jury could have found to render an ordinary man of average disposition liable to act rashly and without due deliberation and reflection. Defendant's alleged fury about the drugs, when contrasted with his weak protest about the prostitution, undermines his alleged concern about the child when both activities were to cease before the couple would be restored custody.

Finally, defendant asserts that the trial court erred in admitting certain colored photographs into evidence on the

3. People v. Morse, 70 Cal.2d 711, 76 Cal. Rptr. 391, 452 P.2d 607; 621 (1969).

4. State v. Jones, 241 Or. 142, 405 P.2d 514, 516 (1965).

ground that their prejudicial nature outweighed their probative value. Defendant urges that the pathologist had testified in detail as to the extensive injuries on the decedent's body; the use of these colored slides was cumulative and solely for the purpose of inflaming the passions of the jury. The pictures were taken by the police at the scene to illustrate the victim as she was found.

In the instant action, the photographs were of probative value in that they served to clarify and illustrate the testimony of the pathologist as well as to illustrate the nature of the attack made on the victim in a situation where malice was an issue.

. . . . Where pictures are probative of essential facts in issue, they are not necessarily incompetent because they are gruesome, even though they are corroborative of other testimony. The question of the propriety of admitting such evidence is largely within the discretion of the trial court, and in the absence of abuse thereof, the ruling will not be disturbed on appeal.[5]

The defendant has not established that the trial court abused its discretion. The judgment of the trial court is affirmed.

TUCKETT, ELLETT, HENRIOD, and CROCKETT, JJ., concur.

5. State v. Gee, 28 Utah 2d 96, 498 P.2d 662, 665 (1972).