The STATE of Utah, Plaintiff and Respondent,

v.

Chester Arvo WELLS, Defendant and Appellant.

No. 15974.

Supreme Court of Utah.

Nov. 13, 1979.

---

3. 38 C.J.S. Gifts § 67.

4. Sec. 78–24–2, U.C.A.1953.

F. John Hill of Salt Lake Legal Defenders Assoc., Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Defendant Wells appeals from his conviction of manslaughter in violation of § 76–5–205 U.C.A. (1953), as amended, for the shooting death of Craig Dirks. He seeks a reversal of his conviction and remand for a new trial, alleging that the trial court made erroneous rulings with respect to certain evidentiary matters. Finding no reversible error, we affirm.

It is undisputed that early in the morning of July 4, 1977, the defendant shot and killed his boarder, Craig Dirks. The defendant claimed, however, that he shot in self-defense as Dirks was threatening him with a jagged broomstick. At trial, friends of the dead man testified that on July 3, they had been invited to the defendant's home for a late breakfast, during which time the defendant confronted Dirks with a telephone bill which Dirks admitted he owed. The defendant, who was intoxicated, called Dirks a "deadbeat" and continued arguing about the bill even after Dirks indicated he would pay it. The guests grew uncomfortable about the confrontation and left around 2:00 p. m.

The quarrel continued off and on throughout the afternoon and eventuated in Dirks kicking out the screen door and breaking a window. The defendant testified that he handed Dirks a broom to clean up the mess and that Dirks swung the broom at him, missing his head and hitting the doorway. The broomstick splintered and left a jagged edge. The defendant thereupon told Dirks to leave the house and not come back. Dirks left and spent the evening with some friends. While Dirks was gone, the defendant continued to drink liquor and procured his .270 caliber rifle from the attic. He loaded it with five shells and set it by the couch where he sat waiting for Dirks to return.

Two of the witnesses who had been at the house earlier in the day testified that during the period of time Dirks was away from the house they received phone calls from the defendant in which he said he was going to kill Dirks when he returned. The witnesses said that the defendant sounded drunk and they did not believe his threats. Dirks returned to the house a little before ·1:00 a. m., carrying two cans of Coors and a six-pack of Budweiser. The prosecution introduced testimony to the effect that Dirks did not like Budweiser and then argued to the jury that Dirks brought it to the defendant as a peace offering.

Shortly after Dirks arrived at the house, the defendant fired one shot from his rifle, killing Dirks almost immediately. The defendant testified that he shot him because Dirks lunged at him with the jagged broomstick in spite of defendant's warning to come no closer.

Immediately after firing the shot, the defendant moved one of the victim's legs. He also moved the broom, placing it in one of the victim's hands. He then unloaded the gun and telephoned the two friends of Dirks he had called earlier to tell them he had shot and killed Dirks. The defendant then notified the authorities. When the police arrived, he told them, "I shot the son-of-a-bitch because he owed me $243.00 for a phone bill."

On appeal the defendant raises three issues: (1) the trial court erroneously admitted evidence of a prior bad act of the defendant which was intended to show that the defendant was the probable aggressor; (2) the trial court erroneously admitted three 3½″ × 3½″ color close-up photographs of the victim's bullet wound; and (3) the prosecutor made improper comments in his closing argument which were designed to degrade the defendant as an evil, dishonest, quarrelsome person.

The defendant took the stand in his defense. On cross-examination, the prosecutor asked the defendant if he had pointed a weapon at Dirks prior to pointing the rifle at him, and the defendant gave a negative answer. Defense counsel did not object to

the question. The prosecution then asked if he recalled an incident one week before the shooting in which the defendant allegedly had pointed an unsheathed bayonet at Dirks. The defendant said he did not recall the incident. On rebuttal, the prosecutor questioned a witness to this incident. The witness stated that the defendant had "kind of come after Craig" with a paring knife and then an unsheathed bayonet, saying he would cut his heart out. According to the witness, Dirks had bared his chest and said, "Well, go ahead, if it will make you happy." The witness then said he took the knife and bayonet away from the defendant, ending the confrontation.

Defendant argues that this evidence constituted a prior bad act and was thus inadmissible under Rules 45, 47 and 55 of the Utah Rules of Evidence. We agree with, and reaffirm, the general principle advanced by the defendant that evidence of prior bad acts is not admissible for the purpose of disgracing the defendant or showing a propensity to commit crime. *State v. Mason*, Utah, 530 P.2d 795 (1975). However, the record before us shows that the evidence was introduced, not for either one of these purposes, but to impeach the defendant's credibility in testifying that he had not previously pointed a weapon at Dirks. It is a well-settled rule that when a defendant testifies in his defense, he is subject to being impeached. *State v. Green*, Utah, 578 P.2d 512, 514 (1978), stated:

> This includes cross-examination on any matter which would tend to contradict, explain or cast doubt upon the credibility of his testimony. Furthermore, any testimony or evidence which is purposed to those same objectives may be introduced in rebuttal.

Since the evidence was introduced to impeach the defendant's credibility, it was admissible for that limited purpose even though it was also evidence of a prior bad act.

The prosecution offered, and the trial court admitted, three 3½″ × 3½″ color photographs of the bullet wound. Dirks

was shot once through the chest, and the pictures depict a close-up view of the wound. The photographs are similar, except that one was taken with the victim's shirt on, one without the shirt but with dried blood around the wound, and one without the shirt and with the blood washed off. The defendant claims that these photographs had no probative value and served only to inflame and prejudice the jury.

We have reviewed the photographs of which the defendant complains and find that they are not gruesome or offensive such that in their absence there would have been a reasonable probability or likelihood the result would have been more favorable to the defendant. The defendant cites *State v. Poe*, 21 Utah 2d 113, 441 P.2d 512 (1968), in support of his contention that the introduction of the photographs was improper. In *Poe*, the Court held that the trial court abused its discretion in admitting color slides, one of which depicted the deceased's head, showing the base of the skull after the skull cap and brain had been removed by the pathologist and the skin peeled over the edge of the skull showing the empty brain cavity, and the other of which showed a top view of the empty cavity. The defendant's reliance on *Poe* is unfounded. It suffices to say that there is no comparability between the photographs in this case and those in *Poe*.

Because the defendant did not dispute shooting Dirks, and because the medical examiner testified that the victim died as a result of the gunshot, the admission of the photographs was superfluous. We do not condone the admission of the photographs in this case, since we are able to find no evidentiary value for the photographs other than the hoped-for emotional impact on the jury. Nevertheless, this error is not reversible. Section 77–42–1 U.C.A. (1953), as amended, requires that errors be prejudicial in order to be reversible:

> 77–42–1. Judgment to disregard errors not affecting rights of parties.—After hearing an appeal the court must give judgment without regard to errors or defects which do not affect the substantial rights of the parties. If error has been committed, it shall not be presumed to have resulted in prejudice. The court must be satisfied that it has that effect before it is warranted in reversing the judgment.

In *State v. Pierre*, Utah, 572 P.2d 1338, 1352 (1977), this Court restated the well-established standard with respect to harmless error:

> This Court does not interfere with a jury verdict because of error or irregularity unless upon review of the entire record it is determined that prejudice has occurred in a substantial manner, i. e., the error must be such that there exists a reasonable probability or likelihood that there would have been a result more favorable to the defendant in absence of the error.

Accord, *State v. Winkle*, Utah, 535 P.2d 82 (1975); *State v. Johnson*, 25 Utah 2d 160, 478 P.2d 491 (1970); *State v. Kelbach*, 23 Utah 2d 231, 461 P.2d 297 (1969); *State v. Seymour*, 18 Utah 2d 153, 417 P.2d 655 (1966); *State v. Sinclair*, 15 Utah 2d 162, 389 P.2d 465 (1964).

Finally, the defendant contends that the prosecutor was permitted to make improper arguments in his closing argument. The prosecution in a criminal case, as well as defense counsel, is entitled to exercise considerable freedom in expressing to the jury his view of the evidence, *State v. Bautista*, 30 Utah 2d 112, 514 P.2d 530 (1973). As this Court stated in *State v. Kazda*, Utah, 540 P.2d 949, 951 (1975):

> . . . it is not only the prerogative, but the duty of either counsel, to analyze all aspects of the evidence; and this should include any pertinent statements or deductions reasonably to be drawn therefrom as to what the evidence is or is not, and what it does or does not show.

We have reviewed carefully the alleged improprieties and find them to be without merit.

Affirmed. No costs awarded.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.