**STATE of Utah, Plaintiff and Respondent,**

v.

**George William BURTON, Defendant and Appellant.**

**No. 17252.**

Supreme Court of Utah.

Feb. 11, 1982.

G. Fred Metos, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Craig L. Barlow, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant appeals his conviction on two counts of theft, a second degree felony defined in U.C.A., 1953, 76–6–404. Defendant claims that the trial court erred in instructing the jury as to the defense of voluntary intoxication and in refusing to deliver a requested "reasonable alternative hypothesis" instruction.

Cliff Bowden, the owner of an automobile allegedly stolen by defendant, drove with his wife to the home of some friends and went inside to visit them, leaving his car parked on the street in front. Approximately ten minutes after entering the

4. Constitution of Utah, Article VIII, Section 9; *Sine v. Salt Lake Transportation Co.*, 106 Utah 289, 147 P.2d 875 (1944).

friends' house, Bowden heard the sound of a car starting and ran outside. Bowden testified that he saw defendant at the wheel of his car, backing it into the street and then pulling away at a high rate of speed. Bowden called the police, who spotted defendant approximately one hour later driving Bowden's vehicle and arrested him. Bowden testified that at the time defendant took his automobile, it contained approximately $2,500 worth of personal property. However, at the time of defendant's arrest, no such property was found in the automobile.

Defendant acknowledges having taken the car, but he claims that he did not intend to steal it. Defendant explained his motive by relating the following series of events: On the afternoon in question, defendant drove his own car to his mother's house, accompanied by an acquaintance, Crazy Fish. Defendant entered the house to get some money and food while Crazy Fish remained in the car. While defendant was in the house, his foster sister arrived just in time to see Crazy Fish driving defendant's car away.

Defendant testified that when his foster sister informed him that Crazy Fish had taken his car, he ran out of the house and began to pursue Crazy Fish on foot. He then discovered Bowden's car with the keys inside and decided to use it to find Crazy Fish and defendant's own car. Defendant denied any intention to keep Bowden's car and claimed that at the time of his arrest, he was on his way to return it to the neighborhood where he had found it.

Concerning the personal property allegedly left in Bowden's car, defendant testified that he did not notice any items of personal property in the car at the time he took it. He also reported that he left the car unlocked and unattended for five to ten minutes while inquiring in a cafe as to the whereabouts of Crazy Fish.

Defendant was charged with theft of Bowden's automobile and of the personal property allegedly left inside. A jury found him guilty on both counts and the court entered judgment accordingly.

1. *State v. Potter*, Utah, 627 P.2d 75 (1981).

The court instructed the jury as follows:

Voluntary intoxication from alcohol or drugs is not a defense to the charge being considered unless the intoxication negates the existance [sic] of the mental state which is an element of the offense and which in the case now before the court is that the defendant acted with a purpose to deprive an individual of his property. Being under the influence of alcohol or drugs is no excuse for the commission of a crime where it merely makes a person more excited or reckless so that one does things one might not otherwise have done. To be a defense to such a crime, one must be so under the influence of alcohol that at the time of the alleged offense he did not know what he was then doing, so that he was then and there incapable of forming the necessary intent.

Defendant claims that the court erred in delivering the above instruction because his defense was not based on voluntary intoxication but rather on the absence of intent permanently to deprive Bowden of ownership. Defendant contends that this instruction confused the jury and created the impression that defendant was seeking to excuse his behavior by claiming intoxication.

Defendant cites no authority to support his claim that instructions concerning voluntary intoxication must be limited to those cases in which intoxication is raised as a defense. He refers only to the general rule that the court must "present to the jury in a clear and understandable manner the substance of the defense advocated by defendant."[1] In this case, the instructions to the jury clearly presented defendant's theory that he lacked the specific intent to commit theft.

The crime of theft with which defendant was charged includes the lesser offense of unlawful taking of a vehicle under U.C.A., 1953, 41–1–109. The instructions to the jury described the elements of the latter offense as follows:

A person commits the offense of Unlawful Taking of a Vehicle if he drives a vehicle, not his own, without the consent of the owner of the vehicle with the intent to deprive the owner of his possession of the vehicle, *without the intent to steal it.* [Emphasis added.]

In contrast, the instruction concerning the elements of the crime of theft provided:

Under the law of the State of Utah a person commits the crime of Theft if that person obtains or exercises unauthorized control over the property of another *with a purpose to deprive the owner thereof.*

\*　　\*　　\*　　\*　　\*　　\*

"Purpose to deprive["] means to have the conscious object to withhold property permanently or for so extended a period or to use under such circumstances that a substantial portion of its economic value, or of the use and benefit thereof, would be lost; or to dispose of property under circumstances that make it unlikely that the owner will recover it. [Emphasis added.]

A separate instruction distinguished theft from unlawful taking by focusing on the specific intent required for the former:

If the State has failed to prove beyond a reasonable doubt that the defendant had the purpose to deprive the owner of his motor vehicle you may consider the lesser and included offense of Unlawful Taking of a Vehicle. However, if the State has proved beyond a reasonable doubt each and every one of the elements listed above then you may convict the defendant of the offense of theft as described in Count I of the information.

The instructions given clearly explained to the jury the importance of a correct determination on the issue of specific intent and the option of finding defendant guilty of the lesser offense if it failed to find that defendant specifically intended to steal.

Defendant argues that the court's inclusion of the instruction on voluntary intoxi-

cation with the above instructions may have confused the jury. However, it was defendant who initially raised the subject of intoxication in his testimony and it was defendant's own counsel who pursued the subject extensively in his direct examination. Defendant testified that he had consumed roughly 18 to 20 cans of beer and smoked an unknown amount of marijuana on the afternoon in question. Defendant's counsel interrogated him in detail on this subject and asked him to describe the effect of the alcohol on his feelings. Defense counsel also questioned other witnesses concerning defendant's appearance and his ability to speak, reason and coordinate his movements during that time.

In addition, defendant testified on cross-examination as follows:

Q. You are not claiming that the alcohol or drugs had affected you to the point you did not understanding [sic] what you were doing?

A. I think if I were sober—

Q. That is not the question. There are a lot of things people do when they are sober they wouldn't do when they are not accountable for them [sic]. Are you claiming that you didn't understand when you took the car?

A. Really I don't think I did.

Q. You don't think you knew what you were doing?

A. Yes. I really don't think I knew what I was doing.

Such testimony easily may have raised a question in the minds of the jurors as to whether defendant's degree of intoxication deprived him of the requisite criminal intent to commit the offenses charged. The jury instruction on voluntary intoxication did not create confusion but rather served to eliminate the confusion potentially created by defendant's testimony. The instruction correctly expressed Utah law pertaining to voluntary intoxication [2] and it was appropriately given in light of the evidence introduced by defendant.[3]

**2.** See U.C.A., 1953, 76–2–306.

**3.** *State v. James,* 223 Kan. 107, 574 P.2d 181 (1977); *State v. Lincoln,* Mo., 482 S.W.2d 424 (1972); *People v. Rogers,* 16 Ill.2d 175, 157

Defendant also appeals on the basis of the trial court's failure to deliver to the jury the following requested instruction:

> To warrant you in convicting the defendant, the evidence must to your minds exclude every reasonable hypothesis other than that of the guilt of the defendant. That is to say, if after an entire consideration and comparison of all the testimony in the case you can reasonably explain the facts given in evidence on any reasonable ground other than the guilt of the defendant, you should acquit him.

Defendant argues that the evidence tending to establish his theft of the personal property which Bowden allegedly left in his automobile was entirely circumstantial. He contends that in cases where such circumstantial evidence constitutes the only proof of guilt, Utah law requires that such a "reasonable alternative hypothesis" instruction be given.

In *State v. Eagle*, Utah, 611 P.2d 1211 (1980), this Court set forth the law pertaining to the necessity of a "reasonable alternative hypothesis" instruction:

> In regard to the propriety of the so-called "reasonable alternative hypothesis" jury instruction, any controversy over its use constitutes nothing more than a tempest in a teapot. The prosecution's burden of proof in *any* criminal case, whether the evidence be direct or circumstantial, or a combination of both, is that of beyond a reasonable doubt. The use of the reasonable alternative hypothesis instruction is merely one way of expressing that necessary burden of proof and *there is no apparent reason to mandate that one, and only one, particular instruction be used by trial judges in conveying to the jury the meaning of that elusive phrase, "proof beyond a reasonable doubt."* [Footnote omitted; emphasis added.]

The United States Supreme Court, in *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 *reh. denied* 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731 (1954), confirmed this rule. Thus, if the jury instructions clearly informed the jury of the standard of proof beyond a reasonable doubt, no "reasonable alternative hypothesis" instruction was required.

The instructions to the jurors specifically directed that in order to find defendant guilty, they must find each of the elements of the crimes charged beyond a reasonable doubt. During the process of determining that the evidence met this high standard, the jurors necessarily excluded all "reasonable alternative hypotheses" suggested by defendant.

We hold that the trial court properly instructed the jury concerning both the theory of the case advocated by defendant and the standard of proof required.

Affirmed.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

N.E.2d 28 (1959); *People v. Conley*, 110 Cal. App.2d 731, 243 P.2d 874 (Dist.Ct.App.1952);

*State v. Odell*, 38 Wash.2d 4, 227 P.2d 710 (1951).