**STATE of Utah, Plaintiff and Respondent,**

v.

**Thomas GARCIA, Defendant and Appellant.**

**No. 18126.**

Supreme Court of Utah.

March 30, 1983.

John W. Ebert, Glenn K. Iwasaki, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Robert N. Parrish, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

A jury convicted defendant of second degree murder, and he was sentenced to five years to life. On appeal, he urges three errors by the trial court: (1) insufficiency of evidence; (2) admission of prejudicial color photographs of the victim; and (3) reception of a prejudicial statement by defendant. We affirm.

We view the evidence in the light most favorable to the jury verdict. Defendant, Samuel Beare, Charles Crick, and Mary Holloway were present in Crick and Holloway's apartment in Salt Lake City on the evening of March 14, 1981. A fight occurred, which began with defendant knocking Beare to the floor with his fist. Crick and Holloway sided with defendant. Beare was severely beaten on the head and chest with a blunt object and stabbed with a knife fifteen times at different angles on the thorax and abdomen to an average depth of six inches. A pathologist testified that any one of these stab wounds would have been sufficient to cause death. A mattress at the apartment became soaked with blood matching that of Beare. Nearby walls were spotted with blood of a type matching Beare's and defendant's.

At about 2:30 a.m. on March 15, 1981, an officer of the University of Utah Police Department driving home from work saw defendant beneath a streetlight. He was dragging a body from a car, while Crick and Holloway stood nearby. Defendant wore no shirt, and his hands were covered with blood. The body was later identified as Beare. The officer stopped at a telephone to summon help, and then followed the vehicle he had seen under the streetlight until it stopped several blocks away. He identified himself as a police officer and ordered the three individuals to lie down on the ground. Defendant fled. The officer pursued and tackled him about two blocks away. Later that day, a knife covered with

blood consistent with Beare's was found at a location adjacent to the route defendant took after depositing the body. The knife was similar to one owned by defendant.

During defendant's trial, the jury was allowed to view five color photographs of the victim's body. The jury also heard testimony from the apprehending officer that defendant said, "I will kill you," to a passerby whom the officer had asked to summon help after he arrested defendant.

 1. *Sufficiency of evidence.* To prevail on his first argument, defendant must successfully show that "when viewing the evidence and all inferences that may reasonably be drawn therefrom, in the light most favorable to the verdict of the jury, reasonable minds could not believe him guilty beyond a reasonable doubt." *State. v. Daniels,* Utah, 584 P.2d 880, 882–83 (1978). *Accord, State v. Kerekes,* Utah, 622 P.2d 1161, 1168 (1980). In this case, the jury could convict if they found that defendant, acting with the required mental state, committed second degree murder himself, U.C.A., 1953, § 76–5–203,[1] or requested, commanded, encouraged, or intentionally aided Crick or Holloway to commit second degree murder. § 76–2–202. We are satisfied that the evidence summarized above was sufficient for the jury to convict defendant of this crime.

2. *Photographs of victim.* Defendant contends that the trial court committed prejudicial error in admitting four color photographs of the body of the victim that were probative of no element of criminal homicide not provable by other competent evidence. He relies on *State v. Poe,* 21 Utah 2d 113, 441 P.2d 512 (1968), and *Commonwealth v. Scaramuzzino,* 455 Pa. 378, 317 A.2d 225 (1974), which reversed homicide convictions for the admission of such photographs.

 We have frequently stated and applied the rule that color photographs of the body of the victim—even photographs that are gruesome—are not inadmissible if they are probative of essential facts, even though they may be cumulative of other evidence. Decisions applying that rule and affirming convictions for murder or manslaughter include *State v. Ross,* 28 Utah 2d 279, 283–84, 501 P.2d 632, 635–36 (1972); *State v. Gee,* 28 Utah 2d 96, 100, 498 P.2d 662, 664–65 (1972); *State v. Poe,* 24 Utah 2d 355, 359, 471 P.2d 870, 872 (1970) (black and white photos); *State v. Jackson,* 22 Utah 2d 408, 454 P.2d 290 (1969); *State v. Renzo,* 21 Utah 2d 205, 211–16, 443 P.2d 392, 396–400 (1968).

The key consideration in the application of this rule has been the relevance of the photographs. In the cases just cited, the photographs were found relevant to establish the degree of the offense, such as by showing the nature of the attack on the victim. The only homicide conviction this Court has reversed for error in admitting color photographs of the body of the victim was *State v. Poe,* 21 Utah 2d at 117, 441 P.2d at 515, cited by the defendant, where the Court found that the photographs "had no probative value." Since the only material facts that could conceivably be adduced from viewing these gruesome photographs were otherwise well established and uncontradicted, the Court observed that the only purpose they served "was to inflame and arouse the jury." *Id.* Similarly, in *State v. Wells,* Utah, 603 P.2d 810, 813 (1979), the admission of photographs of the victim's wounds was held to be error (though not prejudicial on the facts of that case) where they had "no evidentiary value" because they showed nothing more than what already had been established by the medical examiner's testimony.

---

1. Section 76 5 203 provides in pertinent part:
 (1) Criminal homicide constitutes murder in the second degree if the actor:
 (a) Intentionally or knowingly causes the death of another; or
 (b) Intending to cause serious bodily injury to another, he commits an act clearly dangerous to human life that causes the death of another; or
 (c) Acting under circumstances evidencing a depraved indifference to human life, he engaged in conduct which creates a grave risk of death to another and thereby causes the death of another . . . .

Our present law makes clear that the trial court must be concerned with something more than relevance in ruling on the admission of such photographs. Rule 45 of the Utah Rules of Evidence, adopted after the first few decisions in the line of cases cited above, provides that the trial judge "may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will ... create substantial danger of undue prejudice" to the defendant. That discretion is especially germane whenever the prosecution proposes to admit gruesome color photographs of the body of a homicide victim. In all such cases, the court should determine whether the viewing of the photographs by the jury would create a substantial danger of undue prejudice against the defendant, and if so, whether that danger substantially outweighs the photographs' *essential* evidentiary value. The more inflammatory the photograph, the greater the need to establish its essential evidentiary value, *Commonwealth v. Scaramuzzino,* 455 Pa. at 381, 317 A.2d at 226, and, conversely, the more essential the evidentiary value of the photograph, the greater the defendant's burden to require its exclusion on the basis that its inflammatory nature would be prejudicial to him. The point of the reference to "*essential* evidentiary value" in the context of potentially prejudicial photographs of the victim's body is that such photographs would generally be inappropriate where the only relevant evidence they convey can be put before the jury readily and accurately by other means not accompanied by the potential prejudice.

The responsibility of weighing relevance against prejudice is that of the trial judge, and his decision will not be overturned by this Court unless it is shown to be an abuse of discretion. *State v. Ross,* 28 Utah 2d at 284, 501 P.2d at 636; *State v. Gee,* 28 Utah 2d at 100, 498 P.2d at 665; *State v. Renzo,* 21 Utah 2d at 215, 443 P.2d at 399; *State v. Poe,* 21 Utah 2d at 117–18, 441 P.2d at 515. We consider the challenged photographs against that standard.

All of these color photographs were 8 by 10 inches in size, taken of the body at the scene where it was found. Exhibit 9 was taken from a position close to the ground. It shows the sidewalk in the foreground, with spots of blood across it, the adjoining bloodstained grass, and the victim's body, lying on its back, in profile, viewed from its left. The torso is bare and reveals several wounds on its left side. The visible portions of the torso, face, and hair of the victim are covered with blood. This photograph was clearly relevant to show the area where a witness saw the defendant drop the body, and to provide evidence that the victim had been stabbed before he was brought to that location. (The photographs corroborated the testimony of an expert witness that there was not enough blood on the ground for the stabbing to have occurred there.) Defendant did not object to the admission of this exhibit. The question of whether error was committed in admitting the other four photographs over defendant's objection must be determined in light of the fact that this photograph was already properly before the jury.

Exhibit 11 is taken from the same perspective and is simply a closer view of the entire body on the grass, in profile. Exhibit 12 is the same, except it is taken from the feet and more clearly shows the blood-spattered trousers. Both are relevant for the same reasons as Exhibit 9, and neither is significantly more gruesome.

Exhibit 8 is a closeup of the torso and head, viewed from the right side of the body, showing numerous stab wounds, most of which were not visible from the other three exhibits. It also shows the front and right side of the face. The closeup of this gory scene has a considerable emotional impact, but what is revealed is relevant to the nature of the victim's wounds as "clearly dangerous to human life" and to the assailant's "depraved indifference to human life" (elements in second degree murder, note 1 *supra* ).

Exhibit 10 is a closeup of the head and torso, viewed from the top of the head.

It shows nothing of the location not visible in the other exhibits, and what little it shows of the wounds on the torso is more visible on other exhibits. It is mostly a view of blood on the victim's shoulder, head, and hair. If this exhibit were viewed in isolation, a sound exercise of discretion under Rule 45 would require its exclusion. However, in the context of exhibits 8, 9, 11, and 12, as to whose admission we find no error, any increment in the impact of gore was not so significant as to render its admission an abuse of discretion so prejudicial that it requires reversal. *Cf. State v. Wells, supra; People v. Stoudt,* 90 Ill.App.2d 140, 146–47, 232 N.E.2d 800, 803–04 (1967).

3. *Prejudicial Statement.* Finally, defendant contends that it was error to allow the apprehending officer to testify that defendant said, "I will kill you," to the passerby whom the officer had asked to summon help. Defendant contends that this evidence was irrelevant to the issues in the case, and prejudiced him by painting him as a violent person with a propensity to commit murder. Consequently, its admission violated Evidence Rules 45, 47, 55, and 63. We disagree.

▮ Defendant's statement to the passerby was an apparent attempt to counter the officer's effort to obtain help in arresting him near the location where the officer had seen him deposit the body. Like resisting or attempting to bribe an arresting officer, such conduct is relevant as an admission by conduct, "constituting circumstantial evidence of consciousness of guilt . . . ." *McCormick's Handbook of the Law of Evidence* § 271 (2d ed. 1972). Although there is some potential for prejudice in such evidence, we find no abuse of discretion that would justify reversing the trial court's admission of this evidence under the balancing process contemplated by Rule 45. *State v. McCardell,* Utah, 652 P.2d 942, 944 (1982), and cases cited in section 2 herein.

▮ Rule 47 is inapplicable since the evidence was not offered to show a trait of defendant's character. Rule 55 is inapplicable since this was not evidence that the defendant had "committed a crime or civil wrong on a specified occasion" in order "to prove his disposition to commit crime or civil wrong." Rule 63 is inapplicable since the evidence was not offered "to prove the truth of the matter stated . . ." and therefore was not hearsay. *State v. Carlsen,* Utah, 638 P.2d 512, 514 (1981); *State v. Sorensen,* Utah, 617 P.2d 333, 337 (1980).

The conviction is affirmed.

HALL, C.J., and HOWE, STEWART and DURHAM, JJ., concur.