The STATE of Utah, Plaintiff and Respondent,

v.

John Charles CLOUD, Defendant and Appellant.

No. 19884.

Supreme Court of Utah.

May 23, 1986.

Rehearing Denied July 29, 1986.

---

F. John Hill, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant John Cloud appeals from a jury verdict convicting him of second degree murder. Cloud asserts that the trial court erred in admitting photographs of the victim and in refusing his proffered jury instructions. He also claims that the evidence was insufficient to sustain the conviction. We agree that the trial court abused its discretion in admitting the photographs and reverse and remand for a new trial.

On the morning of May 23, 1983, the body of Nyla Johnson was found in her apartment. Johnson had died of multiple stab wounds inflicted several hours earlier by her fiance, defendant John Cloud. The homicide apparently occurred after a lengthy argument between Johnson and Cloud, in which Johnson told Cloud that she intended to break their engagement. Cloud was in the apartment when the body was discovered. He initially maintained that Johnson had been attacked by an unknown assailant, but later admitted killing her.

Cloud was charged with second degree murder under U.C.A., 1953, § 76–5–203(a) and (b) (Repl.Vol. 8B, 1978, Supp. 1985). At trial, the State introduced several photographs of the victim that showed the following: (i) Johnson as she was discovered by the police, fully clothed, lying face down on the floor in a pool of coagulated blood with the middle finger of her left hand extended in what the State claimed was an obscene gesture; (ii) the body after it had been turned over, lying face up in the pool of blood; and (iii) close-ups of three defensive wounds suffered by Johnson, one in the armpit and two on her hands. The State used these photographs to argue that, given the nature of the attack and the number of wounds inflicted, Cloud acted with the intent necessary to sustain a conviction of second degree murder. In his defense, Cloud asserted that his alcoholism, coupled with his distress over a prior divorce and the traumatic prospect of another failed relationship, had created an extreme emotional disturbance so that his actions amounted at most to manslaughter. U.C.A., 1953, § 76–5–205(b) (Repl. Vol. 8B, 1978, Supp.1985). At the close of the evidence, the trial court instructed the jury on second degree murder and manslaughter. The trial court refused to give three of defendant's instructions relative to man-

slaughter. The jury thereafter found Cloud guilty of second degree murder.

■ On appeal, Cloud argues that the trial court erred in admitting the photographs and in refusing to give certain requested jury instructions. He also contends that the evidence was insufficient to sustain the conviction of second degree murder. We first address Cloud's contention that the admission of the photographs constituted reversible error.

The admission of photographic evidence depicting crime scenes and victims' injuries is governed by Utah Rule of Evidence 45, which provides that a "judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will ... (b) create substantial danger of undue prejudice...." [1] This Court has considered the admissibility of such photographs in a number of cases. *See, e.g., State v. Garcia*, Utah, 663 P.2d 60 (1983); *State v. Wells*, Utah, 603 P.2d 810 (1979); *State v. Ross*, 28 Utah 2d 279, 501 P.2d 632 (1972); *State v. Poe*, 21 Utah 2d 113, 441 P.2d 512 (1968) (*Poe I*); *cf. State v. Poe*, 24 Utah 2d 355, 471 P.2d 870 (1970) (*Poe II*). *State v. Garcia* best summarizes the applicable law. *Garcia* indicated that under Rule 45 and our prior cases, when the prosecution proposes to introduce gruesome photographs of a homicide victim, the trial court

> should determine whether the viewing of the photographs by the jury would create a substantial danger of undue prejudice against the defendant, and if so, whether that danger substantially outweighs the photographs' *essential* evidentiary value. The more inflammatory the photograph, the greater the need to establish its essential evidentiary value....

663 P.2d at 64 (emphasis in original; citation omitted).

The Court then explained what it meant by balancing the "essential evidentiary value" of a photograph against its potential prejudicial impact:

> The point of the reference to "*essential evidentiary value*" in the context of potentially prejudicial photographs of the victim's body is that *such photographs would generally be inappropriate where the only relevant evidence they convey can be put before the jury readily and accurately by other means not accompanied by the potential prejudice.*

663 P.2d at 64 (latter emphasis added). Clearly, it is not enough that a potentially prejudicial photograph convey relevant information; it must convey relevant information that cannot readily be provided to the jury by less potentially prejudicial means. *See State v. Wells*, Utah, 603 P.2d 810, 813 (1979). Moreover, even if the photograph is the best available means of conveying the relevant information, the essential evidentiary value of that information must still be balanced against the potential for unfair prejudice.

Of course, because the admission of such evidence under Rule 45 (and its successor, Rule 403) is a matter addressed to the sound discretion of the trial court, a trial court's decision to admit photographic evidence will not be overturned absent an abuse of discretion. *State v. Garcia*, 663 P.2d at 64. Such an abuse of discretion occurred in *Poe I*, where the trial court admitted autopsy photographs of a homicide victim's dissected brain cavity to illustrate the path of the fatal bullets. There was no question in that case that the victim had died as the result of bullet wounds to the head. This Court held that it was reversible error to admit the photographs when "[a]ll the material facts which could conceivably have been adduced from a viewing of the slides had been established by uncontradicted lay and medical testimony" and the sole purpose for introducing the evidence was to "inflame and arouse

**1.** Rule 45 was superseded by Utah Rule of Evidence 403, which applies to the present case. Rule 403 provides in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." The language of this rule varies slightly from old Rule 45; however, the two are substantively identical, and the appropriateness of the analysis set forth in *Garcia* is unaffected by this change.

the jury." 21 Utah 2d at 117, 441 P.2d at 515. In *State v. Wells*, the Court also found that photographs of a homicide victim had no essential evidentiary value because the evidence depicted was already before the jury through the testimony of the medical examiner and that evidence was not contested by the defendant; therefore, the photographs were "superfluous" and had no evidentiary value except the "hoped-for emotional impact on the jury." 603 P.2d at 813. The conviction was not reversed, however, because the error was found to be harmless. *Id.*

In the present case, Cloud argues that the introduction of the photographs constituted reversible error because they were unnecessarily gruesome and had no probative value as to any disputed issues in the case. The State, on the other hand, argues that the photographs were relevant to three critical issues: the autopsy photographs of the stab wounds illustrated the brutality of Cloud's attack; the photograph depicting coagulated blood on Johnson's body assisted in determining when the crime occurred; and the photograph with the allegedly obscene gesture was illustrative of Cloud's mental state.

■ Both before the trial court and here, the State misperceives the standard laid down in *Garcia* for judging the admissibility of gruesome color photographs. This is best illustrated by the record of the lengthy hearing held before the trial judge on defendant's motion to preclude admission of the photographs. During the hearing, all parties conceded that the photographs were very graphic and gruesome. Defense counsel argued that the photographs showed nothing that could not be established by other readily available evidence. The judge repeatedly quizzed the prosecutor as to what the photographs would prove that was not conceded by defendant or that could not be proven through other nonobjectionable evidence. The prosecutor did not suggest that the photographs had any "essential evidentiary value," as that term is explained in *Garcia.* Rather, he argued that they were admissible because they contained relevant evidence. After extensive argument, the trial court apparently accepted the prosecution's statement of the law and denied the motion to exclude. In so doing, the court erred.

Under *Garcia*, potentially prejudicial photographs are "generally inappropriate" and should not be admitted in evidence unless they have some essential evidentiary value that outweighs their unfairly prejudicial impact. 663 P.2d at 64. Only after a determination has been made that the photographs have such value need the weighing be made. The trial court misapprehended the law and for that reason admitted the photographs without first properly evaluating the evidence. The trial judge's observation that the issues for which the photographs were offered were conceded makes it fairly plain that the photographs were not admitted for their essential evidentiary value. Regardless of how the matter is viewed, the conclusion is inescapable that the photographs had no essential evidentiary value. All that they showed was "put before the jury readily and accurately by other means not accompanied by the potential prejudice." *Id.* Under these circumstances, we can only conclude that the photographs were proffered and used solely for the purpose condemned in *Poe I* and in *Wells*—to inflame the jury.

The State contends that four of the photographs—the picture of Johnson lying face up in a pool of coagulated blood and three pictures of specific stab wounds to the hands and armpits—show the number and location of the wounds, thus illustrating the brutality of the attack, and that the coagulated blood is probative of the time of death. In these respects, the pictures add nothing to what was already before the jury. Cloud had conceded that he had committed the killing, that it had been done intentionally, and that Johnson resisted the attack. Nor did Cloud dispute either the medical examiner's testimony as to the time and place of death or the cause of death. The examiner also testified in detail regarding the condition of the body, including the location of each of the 27 stab

wounds, their depth, and the force with which they were inflicted. This testimony was aided by a chart of the body indicating the position of the body and the location of the critical wounds. Police officers also testified as to the location, condition, and position of the body at the crime scene. Cloud's only contention was that the mental stress under which he was acting required a finding that the homicide was merely manslaughter rather than second degree murder. The photographs were not relevant in any way in rebutting Cloud's assertion that he was influenced by extreme emotional distress.

On appeal, the State also argues that the photograph showing an allegedly obscene gesture by the victim indicated that she defied Cloud and that this motivated him to kill her. This ground for admitting the photograph was not specifically advanced to the trial judge during the hearing on the motion to exclude the pictures, but arose during final argument when the prosecutor used the photograph showing the gesture to argue the defiance theory to the jury. The claim of essential evidentiary value for this photograph does not survive analysis. The record does not support a finding that evidence of this gesture could not have been presented to the jury readily and accurately by other means, such as the testimony of the investigating officers or the medical examiner.

It is also worth noting that there is nothing in the record to support the prosecutor's claim that the photograph shows that the victim made an obscene gesture to Cloud before he killed her. This claim, of course, provided the basis for the prosecutor's closing argument to the jury that Cloud killed her because of the "defiance" shown by the gesture.[2] Absent some foundation for the speculation that the gesture was made volitionally by the victim, the gesture depicted in the photograph cannot serve to give the photograph relevance, much less essential evidentiary value.[3]

The foregoing analysis indicates that the trial court abused its discretion in admitting the photographs. The critical question is whether that error was harmless. A conviction will not be reversed because of the erroneous admission of evidence absent a showing that the error likely affected the substantial rights of the defendant. Utah R. Evid. 103(a); U.C.A., 1953, § 77–35–30(a) (Repl.Vol. 8C, 1982).

■ The sole issue before the jury was whether Cloud was acting under extreme emotional distress so that the homicide amounted only to manslaughter; there was no issue as to the intentional nature of the killing or the ferocity of the attack. As noted above, the photographs had no essential evidentiary value as to any issue in the case and were arguably not even relevant to the central point—the stress under which defendant was laboring. Yet the prosecutor fought doggedly to get them into evidence during a lengthy hearing on Cloud's motion to exclude, arguing that they were relevant to the issue. At trial, the photographs were central to the pre-

---

2. During his closing, the prosecutor repeatedly held up Exhibit 6, which depicted Johnson's body with the middle finger of her left hand extended. He argued that the photograph illustrated Cloud's state of mind—that he calmly and coldly murdered Johnson because she "defied" him. For example, the prosecutor argued:

> [Johnson] defied [Cloud]—and you see that last act of defiance in the photographs....
>
> ....
>
> This selfish individual continues to stab this lady who defied him, and that alone is the basis for the killing.
>
> ....
>
> She defied him and therefore caused him to take her life. There was a reason for the killing and it was that defiance. And how do

we know that? It was that last act of defiance (displays exhibit).

There was no evidence to suggest that the position of Johnson's hand was volitional. Given the extensive wounds to the hands, it might as easily have been attributable to a severed tendon or to rigor mortis.

3. In addition, the lack of foundation for the inference drawn by the prosecutor in closing raises questions as to the propriety of the argument presented to the jury and the use made of the photograph in the course of that argument. However, defense counsel made no objection to the argument and has not raised the matter on appeal. Therefore, we decline to reach the issue.

sentation of his case. Not only were all the pictures shown to the jury, but the prosecutor's closing argument focused entirely on the photograph depicting the victim face down in a pool of coagulated blood with the middle finger of her left hand extended. *See* footnote 2, *supra*. This is not a case, then, in which improperly admitted evidence is peripheral. Rather, the improperly admitted photographs here were the focus of much of the prosecutor's presentation of his case, and the inference is strong that they were used primarily to inflame the jury. Under the circumstances, we cannot say that their admission was harmless error. *See Poe I*, 21 Utah 2d at 117–18, 441 P.2d at 515. Therefore, the conviction must be reversed and the case remanded for a new trial.

Because this case almost certainly will be retried, in the interest of judicial economy it is appropriate for us to comment on Cloud's other contentions on appeal that will arise again upon retrial. "[W]hen a new trial or further proceeding is ordered, it is our duty to pass upon questions of law which may be pertinent and helpful in arriving at a final determination of the case." *Lopes v. Lopes*, 30 Utah 2d 393, 518 P.2d 687, 688 (1974); *accord LeGrand Johnson Corp. v. Petersen*, 18 Utah 2d 260, 420 P.2d 615 (1966); *Anderson v. Utah County Board of County Commissioners*, Utah, 589 P.2d 1214 (1979). Those contentions relate to the trial court's refusal to give Cloud's proffered instructions relating to the circumstances under which Cloud should be convicted of manslaughter rather than second degree murder. We consider only the trial court's refusal to give instructions No. 7 and No. 24.[4]

■ The jury was informed that if the State established that a homicide had been committed but failed to prove any of the elements of second degree murder beyond a reasonable doubt, it "should consider" the lesser included offense of manslaughter. Cloud's proposed instruction No. 24 instructed the jury that if it found that Cloud had committed a homicide and there was a reasonable doubt as to which degree of homicide he had committed, it "must convict" Cloud of manslaughter. That instruction, couched in mandatory terms, was close to the language of section 77–17–1 of the Code, which provides: "When it appears the defendant has committed a public offense and there is reasonable doubt as to which of two or more degrees he is guilty, he *shall* be convicted only of the lower degree." U.C.A., 1953, § 77–17–1 (Repl. Vol. 8C, 1982) (emphasis added). While the instruction actually given by the court attempted to assist the jury in determining when Cloud should be convicted of manslaughter rather than second degree murder, it was not entirely clear. When it is plain that a defendant has committed some crime, section 77–17–1 reflects an important policy of resolving reasonable doubts as to the degree of guilt in the defendant's favor. Therefore, jury instructions on this point should follow the statutory language as closely as possible. On retrial, the trial court should not refuse to give a jury instruction that tracks the statutory language.

■ Cloud's proffered instruction No. 7 informed the jury that he was not to be found guilty unless the evidence "exclude[d] every reasonable hypothesis other than that of the guilt of the defendant." We have repeatedly held that if the jury is clearly informed of the standard of proof beyond a reasonable doubt, no "reasonable

---

4. Cloud claims that the trial court erroneously refused to give his proffered instruction No. 21. Cloud's counsel failed to object at trial to the court's failure to give that instruction, which would have instructed the jury that "[w]hen a homicide which would otherwise be murder in the second degree is committed under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation, then the offense constitutes manslaughter."

Failure to object usually results in a waiver, *State v. Malmrose*, Utah, 649 P.2d 56, 58 (1982), although this Court may consider a matter if the error plainly affects a defendant's substantial rights. Under the circumstances before us, we find that the jury was adequately instructed on the lesser included offense of manslaughter. Therefore, we find no plain error in the court's failure to give instruction No. 21.

alternative hypothesis" instruction is required. *State v. Eagle*, Utah, 611 P.2d 1211, 1213 (1980); *State v. Burton*, Utah, 642 P.2d 716, 719 (1982). Viewing the jury instructions as a whole, *State v. Brooks*, Utah, 638 P.2d 537, 542 (1981), we conclude that the jury was adequately instructed about the elements of the crime charged and the standard of proof required. Cloud's claim of error in the trial court's refusal to give instruction No. 7, therefore, is without merit.

The conviction is reversed. The matter is remanded for a new trial.

STEWART and DURHAM, JJ., concur.

HALL, Chief Justice: (dissenting).

I am not persuaded that on the facts of this case the trial court abused its discretion by receiving the photographs of the crime into evidence.

The burden was upon the State to prove the essential elements of the offense of second degree murder as charged. Second degree murder is the unlawful killing of a human being with malice aforethought, while manslaughter is the unlawful killing of a human being without malice.[1]

Inasmuch as defendant admitted the killing, the basic issue at trial was one of his intent in doing so. Defendant testified that he was suffering from extreme mental or emotional distress, and therefore the element of malice was absent from his actions in taking the life of the victim. Consequently, he could at most be convicted of manslaughter. The State was thus put to the task of proving the essential element of malice.

It is not disputed that the photographs accurately depict the condition of the victim at the scene of the crime. The photographs depict the nature and extent of the numerous wounds inflicted and the atrocity of the crime and are therefore competent, relevant, and material to the issue of intent.

All evidence tends to prejudice the jury, and photographs are no exception. The fact that the photographs depict a gruesome scene created by defendant is no reason to exclude them from evidence if they are otherwise admissible. Also, it is not a valid objection that oral testimony has been offered regarding the detail shown by the photographs because photographs give a much clearer impression than does an oral description.

Applying the essential evidentiary value test as espoused by the Court in *State v. Garcia*,[2] I would affirm the conviction and judgment of the trial court.

HOWE, J., concurs in the dissenting opinion of HALL, C.J.

1. *Farrow v. Smith*, Utah, 541 P.2d 1107, 1109 (1975). *See also* U.C.A., 1953, §§ 76–5–203, 76–5–205.

2. Utah, 663 P.2d 60, 63–64 (1983).