Roy Lee POE, Petitioner-Appellant,

v.

John W. TURNER, Warden, Utah State Prison, Respondent-Appellee.

No. 73–1163.

United States Court of Appeals,
Tenth Circuit.

Jan. 23, 1974.

Mary Lou Godbe, Salt Lake City, Utah, for petitioner-appellant.

M. Reid Russell, Asst. Atty. Gen. (Vernon B. Romney, Atty. Gen., and David L. Wilkinson, Chief Asst. Atty. Gen., on the brief), for respondent-appellee.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Roy Lee Poe was convicted in a Utah state court of murder in the first degree and sentenced to life imprisonment. On appeal his conviction was affirmed by the Utah Supreme Court. State v. Poe, 24 Utah 2d 355, 471 P.2d 870 (1970). Thereafter, pursuant to the provisions of 28 U.S.C. § 2254, Poe filed in the United States District Court for the District of Utah, Central Division, a petition seeking habeas corpus relief and alleging as grounds therefor that his right to confront and cross-examine adverse witnesses as guaranteed by the Sixth and Fourteenth Amendments had been violated in the state proceedings. The federal district court, after examining the record of the state proceedings, ruled that Poe's constitutional right to confront adverse witnesses had not been thus violated and denied his petition. On appeal, we affirm.

The issue here presented relates to the use by the state in a retrial of a murder case of the transcript of testimony given by two witnesses in the first trial of the matter, the witnesses in question not being present when the case was tried a second time. Poe was first convicted by a jury of murder in the first degree and sentenced to death. At this trial, Louis Laguna, sometimes referred to as Louis Lagana, and Mary Miner testified for the state. The homicide in question had occurred in St. George, Utah, and Laguna, then a filling station attendant in Glendale, Nevada, testified that within a few hours after the time when the homicide apparently occurred, he had serviced in Glendale a vehicle driven by Poe and his description of the vehicle, coupled with other evidence, indicated that Poe at the time was driving the deceased's automobile. Glendale, Nevada, is on Highway 91 which is apparently a direct route from St. George, Utah, to Las Vegas, Nevada. Laguna was vigorously cross-examined by Poe's counsel in the first trial of this matter.

Mary Miner, as indicated, was also present and testified against Poe in the first trial. She was a waitress in a cafe at Mesquite, Nevada, which is also located on Highway 91, and she testified that Poe had been in the cafe a few hours after the time when the homicide was believed to have taken place. Miner's direct testimony was quite brief, and counsel did not cross-examine.

On appeal, the Utah Supreme Court reversed, holding that the trial court had abused its discretion in admitting into evidence colored slides made of the deceased during the course of an autopsy and then permitting the slides to be displayed to the jury by means of a projector and screen. State v. Poe, 21 Utah 2d 113, 441 P.2d 512 (1968).

On the second trial of this matter, the State was unable to serve subpoenas on either Laguna or Miner and, in this regard, the State offered testimony from four witnesses detailing their unsuccessful efforts to locate either Laguna or Miner. The State then offered the cer-tified transcript of the testimony given by Laguna and Miner on the first trial of the case. Over objection, the trial court permitted this transcript testimony to be read to the jury at the second trial. In so doing, the trial court relied on Utah Code Ann., 77–44–3 (1953), which provides that when a witness in a criminal case has given testimony which is stenographically reported, and the witness thereafter dies or is beyond the jurisdiction of the court, his prior testimony may be read in evidence in the subsequent trial.

The second trial resulted in a verdict of guilty of murder in the first degree. However, the jury recommended leniency and the court accordingly sentenced Poe to life imprisonment. On appeal, as indicated, this conviction was affirmed. State v. Poe, 24 Utah 2d 355, 471 P.2d 870 (1970). In affirming, the Utah Supreme Court, among other things, concluded that the record supported the trial court's determination that a sufficient foundation had been laid to warrant the introduction of the prior testimony of Laguna and Miner under the aforesaid provisions of Utah Code Ann., 77–44–3 (1953). In thus concluding, the Utah Supreme Court summarized the unsuccessful investigative efforts of the State to locate the missing witnesses.

The central issue in this case, as we see it, is whether the record shows a "good faith" effort on the part of Utah authorities to secure the presence of Laguna and Miner at Poe's second trial. If the record so shows, then Poe's confrontation rights under the Sixth and Fourteenth Amendments have not been violated. Let us first examine some of the numerous authorities on this particular point.

The Supreme Court has repeatedly held that the Sixth Amendment right of an accused to confront the witnesses who testify against him in a criminal proceeding is a fundamental right made obligatory on the states by the Fourteenth Amendment. See, for example, Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). However,

as far back as Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), there has been a traditional exception to the confrontation requirement where a witness is unavailable at a subsequent trial of the same case and has given testimony in a prior judicial proceeding against the same defendant under circumstances where the witness was fully examined and cross-examined. *See also* California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). As concerns the meaning of witness unavailability, in Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), it was held that a witness is not unavailable for the purposes of this exception unless the prosecutorial authorities have made a good faith effort to obtain his presence at trial.

■ Applying the foregoing principles to the present case, the transcribed testimony of witnesses Laguna and Miner given at Poe's first trial could be used at Poe's second trial if, and only if: (1) the prior testimony of Laguna and Miner were subject to cross-examination and otherwise bears an indicia of reliability; and (2) the State made a "good faith" effort to secure the presence of Laguna and Miner at the second trial, and were unable to do so. We conclude that both tests are fully met.

■ There is no suggestion of any problem as to the first test. Laguna and Miner testified in the first trial in open court in a full-fledged murder trial where Poe was represented, of course, by counsel. Laguna was cross-examined in detail. Counsel waived cross-examination of Miner, who, as mentioned, testified only briefly, and on a matter that was not a real issue. The transcribed testimony of Laguna and Miner meets the "indicia of reliability" requirement in all respects, quite unlike, for example, the situation in Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), where the initial proceeding was a preliminary hearing at which the accused had no counsel and did not himself cross-examine.

■ Poe's position in this court is that the record does not support the conclusion of the federal district court that the Utah authorities made a good faith effort to secure the attendance of Laguna and Miner at the second trial. We disagree. The record discloses that a representative of the Utah Attorney General's office, a county attorney for Washington County, in Utah, the situs of the homicide, and the Sheriff of Washington County, were all engaged in attempting to locate Laguna and Miner, and it was determined to their satisfaction that neither of the witnesses was then residing in Utah, or, for that matter, ever had. The last known addresses of the two were in Nevada, and accordingly all three of these Utah authorities went to Nevada in their efforts to ascertain the present whereabouts of Laguna and Miner. But their efforts were unsuccessful, even though they enlisted the aid of a deputy sheriff of Clark County, in Nevada.

■ It is true that the investigative efforts of the Utah authorities in Nevada did disclose a couple of leads: (1) Miner was reported to have moved to somewhere in the state of New York; and (2) Laguna was said to have applied for employment with the Santa Fe Railway in the "midwest." In this latter regard, counsel asserts that the Utah authorities should have checked out the leads in New York and the "midwest," which they admittedly did not. We disagree. A good faith search does not mean that every lead, no matter how nebulous, must be tracked to the ends of the earth, figuratively speaking. Without belaboring the matter, we conclude, as did the federal district court, that the Utah authorities did make a good faith effort to locate Laguna and Miner. They did not stop at state boundaries, but went into Nevada, as they should have, in their efforts. This is certainly not a case where the Utah authorities made only a half-hearted effort, almost hoping that they couldn't locate the missing witnesses and could then use their prior testimony and thereby avoid

the additional cross-examination that might be made during the second trial of the matter. In sum, we conclude, as did the trial court, that the Utah authorities were acting in good faith.

In this court, counsel suggests that the federal district court misconceived the "standard" by which "good faith" is to be measured, and erroneously concluded that "good faith" simply meant that the Utah authorities need only determine that Laguna and Miner were not then in Utah, and could then stop at the state boundary. We do not believe this to be the basis of the federal district court's ruling. The ruling of the federal district court, when considered as a whole, clearly indicates that there was no misconception on its part, that court noting that the search of the Utah authorities covered both Utah and Nevada and concluding, as we do, that the leads in New York and somewhere in the midwest were not of "sufficient substance to be within the purview of a good faith search."

Similarly, the Uniform Act to Secure the Attendance of Witnesses is for obvious reasons not brought into play here, as it was in Barber v. Page, *supra*, and the more recent case of Mancusi v. Stubbs, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). In those two cases the whereabouts of the witness in question was known, and hence the "good faith" requirement necessitated a further consideration of whether the prosecutorial authorities, knowing the whereabouts of the witness in question, had taken reasonable steps to secure his presence at the retrial. Here, the whereabouts of the missing witnesses was not known at the time of the retrial, even though the Utah authorities had in good faith attempted to locate them.

Our disposition of the present controversy is well within the perimeters of Mason v. United States, 408 F.2d 903 (10th Cir. 1969). In that case, we held that a witness was "unavailable" even though physically present at the second trial, where the witness at the second trial refused to testify on the grounds of

self incrimination, though he had been granted immunity. There, we noted the testimony was unavailable, even though the "body is available." In the instant case, the bodies were unavailable, despite good faith efforts to locate them.

Judgment affirmed.