**Emilio VALENZUELA, Jr., Petitioner-Appellant,**

v.

**Jerry GRIFFIN, Warden, PNM, and Attorney General of the State of New Mexico, Respondents-Appellees.**

**No. 80–1264.**

United States Court of Appeals, Tenth Circuit.

Submitted on the Briefs Jan. 15, 1981, Pursuant to Tenth Circuit Rule 9.

Decided July 22, 1981.

**708**

R. Raymond Twohig, Jr., Asst. Federal Public Defender, Albuquerque, N. M., for petitioner-appellant.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

PER CURIAM.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Emilio Valenzuela, Jr., was convicted of burglary in a New Mexico court. After exhausting his state remedies Valenzuela brought this habeas corpus action in federal district court. *See* 28 U.S.C. § 2254. This appeal follows the district court's denial of habeas corpus relief.

At trial, the prosecution failed to produce a material witness, Susan Ann Hantikas, and asked leave of the court to present the tape recording made of her testimony at the preliminary hearing.[1] The prosecution represented that it "had [Hantikas] subpoenaed and in fact the State has a bench warrant and is seeking her in another case." The prosecution further asserted, "[we] certainly didn't have anything to do with her not being present and we have been looking for her and attempting to locate her but have been unsuccessful." Valenzuela's counsel agreed that "the State probably is not in any way guilty of keeping [Hantikas] away from the trial." He nonetheless objected to the introduction of the recording, invoking the confrontation clause of the sixth amendment.

---

1. New Mexico Rule of Evidence 804(b) provides:

    (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

    (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding or in a deposition taken

in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination.

The objection was overruled, and the tape recording was played for the jury. Because the jurors complained that they could not understand the taped testimony, the machine was moved closer to the jury, and the tape was replayed. Several portions of the tape were inaudible. The substance of the witness' taped testimony was that she and Valenzuela drove to an acquaintance's house and that she remained in the car while Valenzuela entered the house and removed a typewriter. They later drove to a pawn shop where the witness sold the typewriter for ten dollars. This taped testimony was the bulk of the evidence linking Valenzuela to the burglary. Valenzuela's defense was that Hantikas, and not he, had entered the house and removed the typewriter. Valenzuela was convicted and sentenced to ten-to-thirty years in the state penitentiary.[2]

■ A recent Supreme Court decision, *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), involved the use in a trial of an absent witness' testimony at a prior preliminary hearing, the same situation which confronts us. There the Supreme Court explicated the constitutional limits on the admission of prerecorded testimony of an unavailable witness, finding such admission proper only when (1) the challenged testimony bears sufficient indicia of reliability and (2) the prosecution has satisfied the court that the witness is unavailable. 448 U.S. at 66, 100 S.Ct. at 2539. " '[A] witness is not "unavailable" for purposes of . . . the exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain [the absent witness'] presence at trial.' " 448 U.S. at 74, 100 S.Ct. at 2543 (quoting *Barber v. Page*, 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1321–22, 20 L.Ed.2d 255 (1968)) (emphasis added by Supreme Court). *See Poe v. Turner*, 490 F.2d 329 (10th Cir. 1974).

### A

■ In *Roberts*, the Court found the testimony challenged in that case satisfied the first prong of the test even though no formally designated cross-examination had been conducted at the hearing. Noting that defense counsel had asked the witness leading questions and had generally challenged the witness' credibility, the Court held the testimony had been tested "with the equivalent of significant cross-examination." 448 U.S. at 70, 100 S.Ct. at 2541.[3] In the instant case, Valenzuela's counsel cross-examined the witness at the preliminary hearing. Counsel's questions evidence an attempt to establish the witness' complicity in the burglary, to probe the accuracy of her memory, and to impeach her credibility.[4] We find the challenged testimony was subject to cross-examination and bore sufficient "indicia of reliability" to satisfy the first prong of the test.

### B

Under *Roberts'* second prong, the burden of proving the unavailability of the witness includes a showing that the prosecution has made a good-faith effort to obtain the witness' presence at trial. In the instant case, not a single witness testified as to the witness' unavailability or as to the prosecution's efforts to locate and produce her. The prosecution stated that the government had "been looking for her" and that a subpoena and a bench warrant had been issued. The subpoena and sheriff's return of service are included in the record. The question before us is whether the prosecution's statements, coupled with proof of service of the subpoena, provide a sufficient showing of good faith effort to justify admission of the taped testimony.

Taken alone, the conclusory statements by the prosecution clearly are insufficient

---

**2.** Appellant, who had previously been convicted of burglary of a vehicle and forgery, was sentenced as a habitual offender.

**3.** *Roberts* left open the issue whether the mere opportunity to cross-examine the absent witness at a prior trial or hearing is sufficient to

meet this prong of the test. 448 U.S. at 70, 100 S.Ct. at 2541.

**4.** "[I]n all but . . . extraordinary cases, no inquiry into 'effectiveness' [of counsel's questioning] is required." 448 U.S. at 73 n.12, 100 S.Ct. at 2543.

to demonstrate good faith. *See Wilson v. Bowie*, 408 F.2d 1105 (9th Cir. 1969). In *Roberts* and *Poe v. Turner, supra*, the prosecutors satisfied the burden of showing witness unavailability by presenting detailed, sworn testimony of their efforts to procure witnesses. These cases indicate the necessity of presenting evidence of the good faith of the prosecution whenever the state seeks to introduce former testimony based on the unavailability of the witness.

> [I]f there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation. "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *California v. Green*, 399 U.S. [149], at 189, n.22 [90 S.Ct. 1930, 1951, 26 L.Ed.2d 489] (concurring opinion, citing *Barber v. Page, supra*). The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness.

*Ohio v. Roberts*, 448 U.S. at 74, 100 S.Ct. at 2543.

While service of process on the witness is evidence of prosecutorial good faith, the prosecution's duty does not end when service is accomplished. *See United States v. Mann*, 590 F.2d 361, 368 (1st Cir. 1978) ("Implicit . . . in the duty to use reasonable means to procure the presence of an absent witness is the duty to use reasonable means to prevent a present witness from becoming absent."). Suppose at the time of service the witness unequivocally voiced the intent to be absent from the trial. Surely the good faith standard would not be met unless the prosecution took additional steps to secure the presence of the witness at trial. In the instant case the service was November 11, 1976, for a trial date more than three months later, February 22, 1977. We believe a fair reading of *Roberts* and the other cases requires that the prosecution show what efforts have been made closer to the trial date. A simple statement by the prosecutor that the state had issued a subpoena and bench warrant and "had been looking for her" is not enough. The court must be informed of when the prosecution learned that the witness might not appear and of the steps taken to secure the witness' presence after the likelihood of nonappearance became known. Because the prosecution failed to present such evidence, we find it failed to establish a predicate for the admission of the taped testimony.

C

The Supreme Court recently held that before overturning a state court finding, "a habeas court should include in its opinion granting the writ the reasoning which led it to conclude that any of the first seven factors [of 28 U.S.C. § 2254(d)[5]] were

---

5. Section 2254(d) provides:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, *shall be presumed to be correct*, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for herein-

present or the reasoning which led it to conclude that the state finding was 'not fairly supported by the record.'" *Sumner v. Mata*, 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981). Mindful of this directive, we conclude that the state court's finding that the prosecution made a good faith effort to produce the witness loses its presumption of correctness because "the material facts were not adequately developed at the State court hearing." 28 U.S.C. § 2254(d)(3). We believe the evidence presented on this point is simply inadequate to provide a basis for the court's decision. To sustain the holding of good faith effort on this record would be to seriously erode the good faith requirement.

As the record now stands on the constitutional unavailability for trial of the witness, the admission of her taped testimony does not satisfy sixth amendment standards. Nevertheless, because *Roberts*, clarifying the definitive standards, was decided after this case was tried, and because the prosecutor's efforts may in fact have been sufficient—he represented to the court that he had served the subpoena and had been looking for the witness—we think supplementation of the record on the efforts made is more appropriate here than a remand for a new trial or discharge. Therefore we remand for a hearing in light of this opinion. If the evidence of the prosecutor's good faith effort proves insufficient to meet these standards, the trial court should give the state the opportunity to retry Valenzuela or, in default thereof, discharge him. If the court concludes the evidence is sufficient, that determination may thereafter be reviewed for its sufficiency without first conducting a new trial.

REVERSED AND REMANDED with instructions.

after, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record;
And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears,

or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous. (emphasis added).