**UNITED STATES of America, ex rel. James BRACEY, Petitioner-Appellee,**

v.

**J.W. FAIRMAN and Tyrone C. Fahner, Respondents-Appellants.**

No. 82–2576.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1983.
Decided July 20, 1983.

Sam Adam, Chicago, Ill., for petitioner-appellee.

Ellen M. Flaum, Chicago, Ill., for respondents-appellants.

Before CUMMINGS, Chief Judge, and NICHOLS * and PELL, Circuit Judges.

NICHOLS, Circuit Judge.

In this case the appellee, James Bracey, a state prisoner, petitioned for habeas corpus. A United States district judge, by unpublished memorandum and order, granted the writ and ordered the respondents to release the petitioner unless they retried him within 120 days. We reverse.

The case is unusual and there is no precedent on its exact facts. James Bracey was convicted of attempted murder, "aggravated battery," and "armed violence," in the Circuit Court of Cook County, Illinois. The defendant was also accused of shooting Isaac Neal, and stealing $500 from him. His sentence was 13 years. The victim, Neal, testified at the trial. He said that he, Bracey, Ronald Mallette, Cecelia Wells, and Dorshelle Sanders had spent most of the

day "busting script," attempting to fill drug prescriptions. Neal further said that about 8:00 p.m. Bracey pulled a gun on him. Bracey and Sanders searched him and Wells. Then, he continued, they drove in a car to another location, and Bracey ordered him out. He then began to run and Bracey, standing outside the car, shot him in the back and arm. He fell. Bracey left the car, came up and shot him in the head, then returned to the car and drove off. On cross-examination he could not recall an earlier story he told police that Bracey had "kidnapped" him and Wells from a tavern, and shot him there. On redirect, he remembered this in part; that he told police Bracey had shot him. A police officer testified for the defense that Neal at first said Bracey had shot him outside the tavern, but then he retracted and told the same story as at trial. The officer further said Mallette, Wells, and Sanders all told him they were out "busting pills" when the shooting occurred.

Bullets were removed from Neal's spine and left temple. He also had a wound in his left wrist, which he had held between the gun and his head when he was shot in the head.

Neal admitted a criminal record, including two aggravated assaults to which he had pled guilty.

The other persons named above, and by Neal as eyewitnesses to the shooting, were not called nor was their absence explained to the jury.

The defense called Dorshelle Sanders outside the presence of the jury, but she declined to testify and invoked her privilege against self-incrimination. The defense then told the court that she had, at the preliminary hearing, testified that she shot Neal. The state had cross-examined her at that hearing, but not at length. The defense moved to have her then testimony read to the jury, but the trial court refused, nor would it order the state to grant immunity to her. Her testimony and a statement

* The Honorable Philip Nichols, Jr., of the United States Court of Appeals for the Federal Circuit, is sitting by designation.

to police were both received as "record exhibits," but the court withheld them from the jury, which convicted.

Sanders had made various statements about the crime, *i.e.*, that she did the shooting, that she did not know who did, but that she did not, and then that after all it was she who pulled the trigger. She had admitted the "script busting." The transcript revealed that she lived at Bracey's house. She said at the preliminary hearing that she shot at Neal when he turned towards her, a contention inconsistent with his wounds.

The Illinois appellate court affirmed the conviction. *People v. Bracey,* 93 Ill.App.3d 864, 49 Ill.Dec. 202, 417 N.E.2d 1029 (1st Dist.1981). The supreme court of the state refused permission to appeal. The position of the state courts that considered the case was, among other things, that admission of such hearsay required corroboration of its trustworthiness that was lacking here.

■ The United States district court held that the state courts erred in their interpretation of state law. We are unable to agree that in such a close and difficult case, the Constitution of the United States empowers a federal court to arrive at conclusions concerning state law, inconsistent with those of the state's own tribunals, in the very case. If the state law, as construed by the state's tribunal, provided an unconstitutional result, then the writ should be granted, but not on the ground the state doesn't know its own law.

■ We also find it impossible to believe that the United States Constitution requires the state to admit hearsay evidence in defense of a criminal charge, in face of, not merely doubts of its reliability, but of manifest and utter unreliability. The United States district judge differed from the state courts as to this, largely because he supposed that the state's opportunity to cross-examine at the preliminary hearing, and that the witness was sworn, were ipso facto guarantees of reliability, and the United States Constitution did not allow the state to require any others. As a practical matter, a prosecutor cannot reasonably be expected always to use a preliminary hearing to elicit answers not needed at the preliminary hearing, simply because he should anticipate the witness will later be unavailable. If the state is to be held to this, we might as well have two full dress trials. The contrary argument of course is that a court which goes beyond the ritual safeguards, testimony under oath and opportunity to cross-examine, usurps the function of the jury by making its own assessment of a witness' credibility. But the state must be allowed some input in determination of what will constitute a fair trial—including what issues must be left to the jury. Under all the circumstances, the relationship of the witness to the accused, the conflict of her story with the medical evidence, the readiness with which she made and withdrew her confessions of guilt, all strongly indicate that her testimony at the preliminary hearing had no bearing whatever on whether Bracey actually was guilty of the crime. To say that testimony might have possibly influenced the jury means no more than that the Constitution imposes on the states a sporting theory of justice, or that it prohibits a state judge from approaching the issue whether hearsay evidence is supported by sufficient indicia of reliability, in any spirit of authentic or searching inquiry.

The district judge, like the appellee, relies on the conceded rule that the United States Constitution does not allow a state in its criminal trials to exclude, as hearsay, evidence such as confessions by others than the accused, when it comes with suitable indicia of reliability. *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973); *Wilkerson v. Turner,* 693 F.2d 121 (11th Cir.1982). He referred also to the requirement that any state exclusionary rules may not be so framed as to impede the defense and not the prosecution. *Hughes v. Mathews,* 576 F.2d 1250, 1256 (7th Cir.1978), *cert. denied,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1979). He undertook to refute the state decision where it relied on the absence of reliability factors as recognized by *Chambers.* Disregarding some arguments we pass by as less per-

suasive, he zeroes in on the state's assertion that it did not have a sufficient opportunity to cross-examine Sanders. Why, it had all the opportunity in the world! This of course assumes the state should have foreseen that Sanders would be unavailable for the trial, and should have taken the time of a no doubt busy court to build up a record in anticipation of that possibility. It appears the issue at an Illinois preliminary hearing is "probable cause," *United States ex rel. Haywood v. Wolff*, 658 F.2d 455 (7th Cir.1981) and cross-examination is not unlimited.

The district judge's other argument we consider relevant is that the state court would admit prosecution evidence under similar circumstances, denying inquiry into reliability. As we have said, this undertakes to dispute the state court about interpretation of the state's own law. Apart from this, the state cases he cites are not parallel. One case involves testimony at a preliminary hearing *by the accused himself.* In another, it was inculpatory testimony at a preliminary hearing by a supposedly nervous victim. The state court in the very case thought it was following state precedent, but the United States district judge did not allow the state the privilege of construing its own case law.

It appears by *United States ex rel. Haywood v. Wolff, supra,* that in this circuit the United States Constitution would not be held to require exclusion of inculpatory testimony at a preliminary hearing by a victim if he was "unavailable" at the trial and there were adequate indicia of reliability. This was an Illinois trial. This court reversed a district judge's determination, on habeas corpus, that the "confrontation" clause required exclusion. The state courts, including the intermediate appellate court, had held the indicia of reliability adequate. This court went over them in all angles and considered detail, and agreed, with one dissent, that the indicia were adequate. That case preceded the one we have under review and it wholly refutes the idea that the Illinois rule is somehow more lenient on the prosecution than on the defense, assuming the very parallel cases of the prosecution or the defense, respectively, wishing to use testimony of an "unavailable" witness to inculpate or exculpate the person on trial. It does not, from *Haywood,* appear likely that Illinois will be able to discriminate in this fashion, if it wishes to do so, and retain its prisoners on habeas corpus. There is certainly nothing to suggest in *Haywood* that the indicia of reliability are per se sufficient if the prior testimony of the "unavailable" witness was given under oath and with opportunity, whether or not used, for cross-examination, no matter how unreliable all other indicia may show it to be.

In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Court goes over the previous decisions on the mirror image of our problem, which a prosecutor's use of an "unavailable" witness' preliminary hearing testimony presents. The question whether an unused opportunity to cross-examine sufficiently indicates reliability is noticed but passed over as the Court considers that the cross-examination in that case was in fact thorough.

■ It is clear from *Wilkerson v. Turner, supra,* that absence of cross-examination does not necessarily establish unreliability. In that case the exculpatory statement was in an affidavit, but other indicia of reliability were deemed adequate. In *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), the exculpatory out of court statement was an oral confession by another to a witness, that it was he who had fired the fatal shot. The summary per curiam opinion locates reliability in corroborating evidence and in all the circumstances.

■ It is unnecessary to attempt to state what the law is respecting the impact of federal constitutional law upon state hearsay rules and their exceptions. To dispose of this case it is sufficient to state what the law is not. The United States Constitution does not impose upon a state in state criminal trials a rule that an exculpatory statement, otherwise hearsay by an "unavailable" witness, must be considered reliable, despite numerous contrary indicia, if only it

was made under oath and subject to an unused or partially used opportunity to cross-examine. This is one area in which the state remains free to make its own law, and no decision has been found to the contrary. The decision of the district court asserts such a rule and it therefore is in error and must be reversed.

A great deal was said by the district judge and by the parties about other issues. One was whether the witness, Sanders, was legally "unavailable" because of her fifth amendment plea, upon which she was excused from testifying. We assume that she was "unavailable." A second was whether the alleged error of the state court was "harmless." Our determination that there was no such error subsumes this issue. A third issue below was whether the trial court could or should have required the state to grant Sanders immunity. The district judge held in favor of the state on this issue and it is not before us.

Since there are no other issues remaining for adjudication which could produce a different result, the cause is remanded with directions to dismiss the writ.

REVERSED.