Ervin Devere **ELLISON**

v.

**Stephen H. SACHS, Attorney General of the State of Maryland.**

**Civ. A. No. M–83–4455.**

United States District Court,
D. Maryland.

March 23, 1984.

Barnet D. Skolnik, Marc Seldin Rosen and Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., and Douglas M. Smith, Annapolis, Md., for petitioner.

Carmina Szynyog, Asst. Atty. Gen., Baltimore, Md., for respondent.

JAMES R. MILLER, Jr., District Judge.

## MEMORANDUM AND ORDER

On December 28, 1983, the petitioner, Ervin Devere Ellison, through his attorneys, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Paper No. 1). A hearing on this petition was held on February 15, 1984. Subsequently, the petitioner and the respondent filed supplemental memoranda of law on questions raised at the hearing. (Paper Nos. 11 & 12). The matter is now ready for decision.

### I. Background

#### A. Trial and Pretrial Hearing

The petitioner was indicted on April 28, 1982, by a Grand Jury in Prince George's County, Maryland, on four counts: second degree rape, assault with intent to rape, second degree sexual offense, and assault with intent to commit a second degree sexual offense. (Paper No. 3, Exh. 2). On July 7, 1982, a hearing was held by Judge James M. Rea, of the Circuit Court for Prince George's County, on the pending motions filed by the petitioner,[1] including the motion to suppress the extrajudicial photographic identification of Ellison by the five year old victim. (Id., Exh. 2). Ellison chose to absent himself from this hearing. (Id. at M–3–5).

At the July motions hearing, the prosecution called Detective Alexander of the Prince George's County Police Department, Major Assaults Division, Child Abuse Unit. (Id. at M–15). Detective Alexander testified that she interviewed Tanya Matthews, the five year old victim, on February 17, 1982, six days after the incident giving rise

to this indictment. (Id. at M–15). Detective Alexander testified that Tanya was shown two sets of photographs. The first set consisted of photos of individuals taken from police files, and Tanya did not recognize anyone in this group. (Id. at 16–17). Tanya was shown a second set of photographs which consisted of photographs of the male employees at the Grace Brethren School, which Tanya attended and where the incident allegedly took place. (Id. M–18). Tanya picked out one photograph of someone who went to her school and whom she described as "a good boy." (Id. at M–19). She picked a second photograph, a photograph of Ellison, and said the person depicted therein was a "bad boy." Detective Alexander testified that Tanya said that person was a "bad boy" because "he had done something bad to her. He had stuck a needle in her." (Id. at M–19). The photographs were scrambled and Tanya identified the "bad boy" photograph twice more. (Id. at M–20–21). Ellison's counsel then cross examined Detective Alexander. (Id. at M–22–30).

Tanya was also called as a witness at the motions hearing. (Id. at M–37). Before permitting the Clerk to administer the oath, Judge Rea conducted an examination of Tanya's understanding. (Id. at M–38–41). Counsel for the state and the petitioner's counsel were also permitted an opportunity to examine Tanya's competence to testify. (Id. at M–41–45). After the court ruled Tanya was competent to testify, Tanya was questioned regarding the February photographic identifications. (Id. at M–45–48). At the hearing, Tanya again identified Ellison's photograph as that of a "bad boy." (Id. at M–50). Tanya stated that the man was bad because "he stuck a needle in" her. (Id.). Petitioner's counsel asked no questions about the in-court photographic identification, (Id. at M–51), but asked several questions regarding Tanya's ability to discern hair color and colors in general.

---

1. Three motions were pending at this hearing: a motion to suppress the photographic identifications made in February for the Prince George's County Police Department, a motion for a bill of particulars, and an inquiry into the discovery provided the defendant. (Paper No. 3, Exh. 2, M–5–6).

Tanya's mother also testified, at petitioner's counsel's request, about Tanya's recitation of the incident, including the earlier description of her assailant given by Tanya. (*Id.* M–55–58). Judge Rea then ruled that the photographic identification by Tanya on February 17, 1982 was legally proper. Judge Rea noted, prophetically, that the trial judge would also need to rule on Tanya's competence to testify. (*Id.* at M–63).

A jury trial began on August 11, 1982, on the four-count indictment with Judge Arthur Ahalt presiding. When the victim was called to testify, defense counsel requested a ruling on the competency of the witness. (Paper No. 3, Exh. 2, 1–5, 1–18). After examination by the court and counsel (*id.* 1–20–42), and argument by counsel (*id.* 1–43–46), Judge Ahalt ruled that Tanya was incompetent to testify because of her inability to recall events occurring in February, 1982. (*Id.* 1–47–51).

The State called Tanya's mother, Mrs. Matthews. She testified that, when she and her husband picked up Tanya from the Grace Brethren School on February 11, 1982, Tanya's clothes were in disarray, and, upon reaching home, she discovered that Tanya had blood in her pants and a reddened genital-rectal area. (*Id.* at 1–55–57, 1–67). Tanya was bathed and the next evening, following school, taken to her pediatrician and Prince George's County Hospital. (*Id.* at 1–57–59).

Dawn Western and Barbara Mazella, teachers at Grace Brethren School, testified that Tanya was at the school on February 11, 1982 and that Tanya was not alone with Ellison at the school on that day. (*Id.* at 1–73–103). After Detective Hall of the Prince George's County Police testified briefly about his investigation at the school on February 19, the State moved to have the transcript of the July 7, 1982 motions hearing admitted into evidence, which defense counsel opposed. (*Id.* at 1–110–122). The court sustained the objection. (*Id.* at 122–123).

The State then called Detective Alexander to the stand, who, over objection, testi-

fied that Tanya selected the photograph of Ellison and stated that he was the "bad boy" who "stuck the needle in her." (*Id.* at 1–127, 1–132). Two drawings made by Tanya for Detective Alexander in February, 1982 were also identified. The first drawing was of the "box" the incident allegedly occurred in.[2] The second drawing depicted the man who "stuck the needle in her" with eyes, nose, arms, and legs located in the appropriate places and the "needle" drawn on the body in the approximate location of a male penis. (*Id.* at 1–135, 1–138, 1–141). The defendant objected to the latter drawing, State's Exhibit 23, as hearsay, (*id.* at 1–142–143), but both were admitted.

The following day, Dr. Dennis Frank, the physician at Prince George's County Hospital who examined Tanya, testified that in his opinion she had been abused by "either a penis or by a foreign object." (*Id.* at 2–9).

Sheree O'Brien, courtroom clerk for the Circuit Court for Prince George's County, was then called. She testified that Tanya picked out the photograph of Ellison at the July 7, 1982 hearing before Judge Rea. (*Id.* at 2–10–11). Ms. O'Brien also testified that Tanya had chosen Ellison's photograph as one of "the bad man." (*Id.* at 2–16).

Ms. Matthews was recalled to the stand and testified that Tanya told Dr. Fowler, her pediatrician, when he asked what had happened, that a man had stuck "a needle" in her rectal area. (*Id.* at 2–30–31). Defense counsel objected. (*Id.* at 2–27–29).

At the close of the State's case, the court granted a motion for acquittal as to the charges of second degree rape and assault with intent to rape. (*Id.* at 2–38). The defendant presented evidence (*id.* at 2–39–117), and, following closing argument, (*id.* at 2–139–155), the jury retired. A verdict of guilty on Count III, second degree sexual offense, and not guilty of Count IV, assault with intent to commit a second degree sexual offense, was ultimately re-

---

**2.** The State's theory was that the assault occurred in a shed on the school grounds.

turned. A new trial motion was denied. (Paper No. 3, Exh. 10).

### B. *Appellate Proceedings*

Petitioner appealed his conviction to the Court of Special Appeals of Maryland. In his brief, he presented three issues: (1) did the trial court err by admitting into evidence pre-trial photographic identifications of Ellison made by an out-of-court declarant who was not available to testify at trial?; (2) did the trial court err in admitting through the testimony of the victim's mother an out-of-court declaration by the infant victim to a treating physician?; and (3) did the trial court err by admitting into evidence a drawing made by an out-of-court declarant and introduced through the testimony of a police officer when the out-of-court declarant was not available to testify. (Paper No. 3, Exh. 3) (*See also* Respondent's Brief, Paper No. 3, Exh. 4).

The Court of Special Appeals of Maryland, in an unreported per curiam opinion, affirmed the judgment. The Court concluded that Ellison, through his counsel, had failed to object to the testimony at trial of Ms. O'Brien who testified to one extrajudicial identification at the pre-trial hearing and that the testimony of Detective Alexander regarding a previous extrajudicial identification was harmless error because of the identification by Tanya of Ellison through Ms. O'Brien. The statements made by Tanya to Dr. Fowler, related to the jury through the testimony of Ms. Matthews, were ruled to be admissible, because the same safeguards that permitted a treating physician to testify as to those statements would apply to one who overheard them. Finally, the Court of Special Appeals concluded that the drawing submitted to the jury was not hearsay. (Paper No. 3, Exh. 5).

Ellison applied to the Maryland Court of Appeals for a Writ of Certiorari (Paper No. 3, Exh. 6; Respondent's Brief, Exh. 7), on the issue of whether the trial court had erred by admitting Detective Alexander's testimony regarding the extrajudicial photographic identification made by Tanya on February 17, 1982 when the witness was unavailable at trial. His petition was denied on December 1, 1983. (Paper No. 3, Exh. 9).

### II. *Petition in Federal District Court Pursuant to 28 U.S.C. § 2254*

In his petition here for a Federal Writ of Habeas Corpus, Ellison alleges that his Sixth Amendment rights of confrontation and cross examination were violated at his trial.

In opposition, the State contends that (1) the petitioner failed to exhaust state remedies as to all claims raised in the petition; (2) Ms. O'Brien's testimony cannot form the basis of the writ because the petitioner did not object to that testimony at trial and there is no basis for an exception pursuant to *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); (3) the admission of Detective Alexander's testimony regarding identification, if error, was harmless; (4) Alexander's testimony regarding Tanya's February 17, 1982 photographic identifications was admissible, because Tanya was available for cross examination at trial or during the pretrial motions hearing; (5) Tanya's photographic identification during the pre-trial motions hearing was admissible as former testimony of an unavailable declarant; and (6) that the evidence, even if inadmissible under the hearsay rules, bore indicia of reliability and, therefore, did not offend the confrontation clause of the Sixth Amendment. (Paper No. 6).

### III. *Exhaustion*

### A. *Exhaustion of All Claims*

In its initial opposition to the petition for a Federal Writ of Habeas Corpus, the State asserted that Ellison had failed to exhaust his state remedies as to all of the claims made and that, therefore, in accordance with *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the petition must be dismissed. The State's confusion regarding the particular conduct which forms the basis for this petition is understandable for, while the petitioner has presented the factual background of this

case and has alleged that his right to confrontation of the witnesses against him was denied by the admission of evidence relating to extrajudicial identification, the particular conduct depriving the petitioner of his Sixth Amendment rights is not identified specifically in the initial pleadings. At oral argument and by telephone, counsel for the petitioner stated that this petition is confined to the claim for which state remedies have been exhausted, *i.e.*, the extrajudicial identification made by Tanya to Detective Alexander and submitted to the jury through Detective Alexander's testimony. Accordingly, contentions (2) and (5) by the State in its initial opposition to this petition need not be addressed.

### B. *Different Legal Theories As Affecting Exhaustion*

The State asserts that where a petitioner relies on the same facts relied on in the State courts, but uses a different legal theory in federal court than the one asserted previously, his claims have not been exhausted. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). The State alleges that the petitioner alleged only violations of the hearsay rules in the State courts, but here asserts violations of the Sixth Amendment. (Paper No. 6, at 11–12).

The court concludes that *Anderson*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), presents no bar to this court's consideration of the petitioner's Sixth Amendment confrontation claim. The record reveals that Ellison asserted in the Court of Special Appeals and in the Court of Appeals that his Sixth Amendment rights were violated by the admission of Detective Alexander's testimony regarding the February 17, 1982 photographic identifications by Tanya. (Paper No. 3, Exh. 3, at 4, 13, 15; Exh. 7, at 1, 10–11). That the State courts did not isolate this issue in the opinions during the appellate process is not determinative. A petitioner is only required to raise the issue to the State courts.

Moreover, at least one Federal Court of Appeals has concluded that raising a hearsay claim in the State courts is also sufficient to exhaust the confrontation issue. *Hutchins v. Wainwright*, 715 F.2d 512, 518–19 (11th Cir.1983). Although not condoning the presentation made by the petitioner in *Hutchins* to the State courts, where, without using the words "confrontation clause" or "Sixth Amendment," he argued that allowing and urging the jury to infer that an unnamed witness had identified him was a violation of hearsay rules, the Eleventh Circuit stated that the hearsay error alleged by the petitioner was exactly what the Confrontation Clause was designed to prevent and that the Sixth Amendment issue had been sufficiently presented to the State courts. This decision was reached by the Eleventh Circuit with an awareness of the teachings of *Anderson*. *See also Thomas v. Estelle*, 582 F.2d 939, 941 (5th Cir.1978) (objection on hearsay grounds sufficient to present federal Confrontation Clause claim).

### IV. *Discussion*

#### A. *Background*

The Sixth Amendment's Confrontation Clause, made applicable to the states through the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 403–05, 85 S.Ct. 1065, 1067–68, 13 L.Ed.2d 923 (1965); *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974), provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This right has long been considered one of the most important safeguards essential to a fair trial. *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895); *United States ex rel. Haywood v. Wolff*, 658 F.2d 455, 459 (7th Cir.1981) (per curiam). "[I]ts denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process.'" *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973), *quoting Berger v. California*, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969).

■ The historical evidence concerning the Confrontation Clause and its underlying policies leave little doubt, however, that the Clause was not intended to prohibit all hearsay. *See California v. Green,* 399 U.S. 149, 156–57 & nn. 9, 10, 90 S.Ct. 1930, 1934–35 & nn. 9, 10, 26 L.Ed.2d 489 (1970). The basic rule against hearsay is riddled with exceptions varying by jurisdiction, *see* E. Cleary, *McCormick on Evidence* §§ 244, 252–324 (2d ed. 1972), *see, e.g.,* Fed. R.Evid. 803, 804, but, as the Supreme Court has stated several times, the Sixth Amendment does not exclude all hearsay. *See Mattox,* 156 U.S. at 243, 15 S.Ct. at 339; *Green,* 399 U.S. at 149, 90 S.Ct. at 1930. While the hearsay rules and the Confrontation Clause are designed to protect similar values, the overlap is not complete. Violations of the Confrontation Clause have been found even though the statements were admitted under a well-recognized hearsay exception. *See, e.g., Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Conversely, evidence admitted in violation of the hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied. *Green,* 399 U.S. at 156, 90 S.Ct. at 1934. The difficulty often presented is whether the competing interests of public policy and practical considerations warrant dispensing with face to face confrontation at trial. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *Green,* 399 U.S. 149, 90 S.Ct. at 1930; *Barber,* 390 U.S. 719, 88 S.Ct. at 1318.

The guidelines to be used in determining whether the admission of hearsay violates the Confrontation Clause were succinctly summarized in *Ohio v. Roberts:*

"In sum, when a hearsay declarant is not present for cross examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."

*Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. *See also United States ex rel. Bracey v. Fairman,* 712 F.2d 315 (7th Cir.1983); *United States v. Murphy,* 696 F.2d 282, 286 (4th Cir.1982); *United States v. Brainard,* 690 F.2d 1117, 1124 (4th Cir.1982); *United States v. Poland,* 659 F.2d 884, 895–96 (9th Cir.), *cert. denied,* 454 U.S. 1059, 102 S.Ct. 611, 70 L.Ed.2d 598 (1981); *Valenzuela v. Griffin,* 654 F.2d 707 (10th Cir.1981); *Glenn v. Dallman,* 635 F.2d 1183, 1186–87 (6th Cir.1980); *United States v. Zurosky,* 614 F.2d 779, 792–94 (1st Cir. 1979), *cert. denied,* 446 U.S. 967, 100 S.Ct. 2945, 64 L.Ed.2d 826 (1980); *Phillips v. Wyrick,* 558 F.2d 489, 496 (8th Cir.1977), *cert. denied,* 434 U.S. 1088, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978); *Rhoden v. Israel,* 574 F.Supp. 61, 63–64 (E.D.Wis.1983); *United States ex rel. Gayden v. McGinnis,* 574 F.Supp. 661, 664–65 (N.D.Ill.1983) (all applying the two prong test identified in *Roberts* ).

At the time of trial in August of 1982, Tanya was declared incompetent to testify because she could not recall any events which had occurred during the month of February, including the alleged assault. The hearsay declarant was, therefore, not available for cross examination at trial.[3]

---

**3.** Relying on Justice Harlan's concurrence in *Green,* 399 U.S. at 188–89, 90 S.Ct. at 1950–51, courts have concluded that when a declarant has a lapse of memory the Confrontation Clause requires only that the declarant be available at trial. *United States v. Payne,* 492 F.2d 449 (4th Cir.1974); *United States ex rel. Thomas v. Cuyler,* 548 F.2d 460, 461, 462–63 (3d Cir.1977). A close analysis of these cases, however, reveals that there is no Sixth Amendment violation when the trier of fact can evaluate the truth of a prior statement by the declarant testifying to the underlying facts at trial. *Rado v. State of Connecticut,* 607 F.2d 572, 580 n. 6 (2d Cir.1979), *citing Payne,* 492 F.2d 449; *Cuyler,* 548 F.2d 461. The declarant in the present case had a complete memory loss and did not testify at all about the underlying facts.

The first prong of the *Roberts* test is met. This case is centered on the second prong.

█ The testimony of Detective Alexander about what Tanya said when looking at the photographs was not admissible under any well-recognized exception to the general rule against hearsay. While the parties seem to analyze this hearsay as if it were admissible under the "former testimony" exception identified in the Federal Rules of Evidence in Rule 901(b)(1), that exception does not clearly apply as it was not the transcript of that former testimony which was offered, but the testimony of a witness who testified at the former hearing about what she had been told before the former hearing. To the extent this exception is relevant, it is so only by analogy to assist the court in determining whether indicia of reliability and trustworthiness are present in connection with the subject testimony of Detective Alexander.

### B. *Indicia of Reliability*

The opportunity for cross examination has traditionally been held to be one of the accepted indicia of reliability. *Watkins v. Sowders,* 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981); 5 J. Wigmore, *Evidence* §§ 1367 *et seq.* (3d ed. 1940 & 1983 Supp.). When the defense attorney has cross examined the identifying witness, courts have often concluded that a sufficient safeguard has been provided so as to ensure that evidence of extrajudicial identification may be placed before the jury. Yet cross examination or the opportunity for cross examination is not talismanic. *See Russ v. Israel,* 531 F.Supp. 490, 496 (E.D.Wis.1982). Courts have permitted hearsay which was not tested by cross examination, *see, e.g., United States v. West,* 574 F.2d 1131, 1136–37 (4th Cir.1978); *United States v. Garner,* 574 F.2d 1141, 1144 (4th Cir.), *cert. denied sub nom. McKethan v. United States,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978); *United States v. Mastrangelo,* 533 F.Supp. 389, 390–91 (E.D.N.Y.1982) (and cases collected therein) (grand jury testimony); *United States v. Iron Shell,* 633 F.2d 77, 82–85 (8th Cir.1980); *United States v. Nick,* 604 F.2d 1199, 1201–02 (9th Cir.1979) (statements made to treating physician), and excluded testimony when a *meaningful* opportunity to cross examine the declarant was not provided. *See, e.g., United States v. Paducah Towing Co.,* 692 F.2d 412 (6th Cir.1982); *United States v. Wingate,* 520 F.2d 309, 316 (2d Cir.1975), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976). *See also* 5 Wigmore, *Evidence* § 1387 at 99.

Numerous courts have approved the admissibility of a transcript of pre-trial proceedings when the declarant was cross examined at the prior proceedings. *Roberts,* 448 U.S. 56, 100 S.Ct. at 2531; *Green,* 399 U.S. 149, 90 S.Ct. at 1930; *Wolff,* 658 F.2d 455; *Valenzuela,* 654 F.2d 707. The Supreme Court has indicated in dicta, *Roberts,* 449 U.S. at 70, 100 S.Ct. at 2541, and the lower courts have generally concluded that the *opportunity* to cross examine the declarant at the prior proceeding can be sufficient. "The actual use then made of the opportunity becomes a matter of defense strategy, and deliberate trial tactics do not ordinarily exact constitutional protection." *Phillips,* 558 F.2d at 496. *See also Glenn,* 635 F.2d at 1187; *United States v. Amaya,* 533 F.2d 188 (5th Cir. 1976), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977); *Zurosky,* 614 F.2d at 793. Thus, several courts have admitted the transcript of the testimony of a witness at a preliminary hearing even though the witness was subjected to a less searching cross examination than would have been the case at trial. *Wolff,* 658 F.2d at 455; *Glenn,* 635 F.2d at 1186–87; *Russ,* 531 F.Supp. at 496–97; *Rhoden,* 574 F.Supp. at 64. *But see Coleman v. Burnett,* 477 F.2d 1187, 1198–1202 (D.C.Cir. 1973). One court has permitted the admission of the transcript of testimony at a motion to suppress hearing. *Poland,* 659 F.2d at 895–96.

In each of these cases, however, the respective court, in reaching its decision, examined whether or not a meaningful opportunity for cross examination had been

available and whether there was a similar motive in developing the testimony at the earlier proceedings to the motive which would have existed at trial, as well as all other indicia of reliability. *See Bracey*, 712 F.2d at 319; *Wolff*, 658 F.2d at 455; *Poland*, 659 F.2d at 884; *Phillips*, 558 F.2d at 497; *Rhoden*, 574 F.Supp. at 64; *Gayden*, 574 F.Supp. at 665; 5 Wigmore, *Evidence* § 1386. *See also Bedford v. State*, 293 Md. 172, 443 A.2d 78 (1965); *Johnson v. State*, 237 Md. 283, 206 A.2d 138 (1965); *Howard v. State*, 4 Md.App. 74, 75–76, 241 A.2d 192 (1968).

■ In an examination at a suppression hearing of the admissibility of an extrajudicial identification, the "central question" is "whether under the 'totality of circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), *quoted in Poland*, 659 F.2d at 986. *See also Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The interests of defense counsel at the pre-trial suppression hearing are, therefore, not limited to whether the procedure was suggestive. *Id.* The determinations to be made by the jury and the suppression hearing judge have been recognized by the Supreme Court as often similar. *Watkins*, 449 U.S. at 347, 101 S.Ct. at 658.

In the present case, the record is inconclusive as to the scope of cross examination which would have been allowed by Judge Rea to Ellison's counsel at the time of the pre-trial suppression hearing. While it is clear that the lawyers on both sides objected on the grounds that questions or proffers were beyond the limited scope of the suppression issue, (Paper No. 3, Exh. 2, at

M–28, 47, 54, 56 & 57), all of these objections but one were overruled by Judge Rea. The record also reveals that the scope of the examination involved more than the suggestiveness of the procedures involved during the February 17, 1982 photographic showing. Defense counsel was permitted to examine both Ms. Matthews and Detective Alexander regarding Tanya's initial description of the assailant. (*Id.* at M–23, 56–57). The cross examination of Tanya concerned her ability to describe her alleged assailant. (*Id.* at 52–54). Yet the ruling by the motions judge (*id.* at M–62–63), and the closing argument of the State prosecutor at the pre-trial motions hearing (*id.* at M–61–62), indicate that the only issue before the court was whether the procedures used by the police during the photographic identification of February, 1982 were suggestive. The subsequently expressed intentions of Judge Rea seem to indicate that the scope of the inquiry of the July, 1982 suppression hearing was limited to the suggestiveness of the procedures used during the photographic array.[4] *But see* Paper No. 12, Exh. A, at 26–38 (scope of suppression hearing on photographic identification in another case handled by Judge Rea was held by him to be broader than mere suggestiveness of the procedures used).

Even assuming, however, that adequate opportunity existed at the pre-trial hearing to cross examine Tanya on all issues critical to her extrajudicial photographic identification and her concomitant extrajudicial statements to Detective Alexander, a review of all the circumstances must be made by this court to determine whether the statements made by Tanya and submitted to the jury through the testimony of Detec-

---

**4.** Ellison has submitted an affidavit of Judge Rea wherein he states that the scope of the inquiry at the pre-trial suppression hearing was limited to the narrow issue of whether the photographic array was "impermissibly suggestive." That statement provides no enlightenment on the scope of the hearing for the term "impermissibly suggestive" may be used not only to describe the procedures, but also all of the surrounding circumstances. Judge Ahalt, however, at trial indicated that the suppression hearing

was limited to whether the procedures used during the identification were suggestive, and Judge Rea, in his affidavit, indicates that that characterization of the narrowness of the issue and the purpose for which cross examination would be allowed is accurate. Thus, it appears that the judge presiding at the time of the suppression hearing would have limited the scope of cross examination. At least it is clear that, unlike *Zurosky*, 614 F.2d 779, the scope of cross examination was not unlimited.

tive Alexander have the indicia of reliability and trustworthiness. The opportunity for cross examination or the scope of actual examination is only one factor to be considered. This court's examination of the circumstances surrounding Tanya's February identification causes it to conclude that the hearsay admitted at trial in August of 1982 was unreliable. *See Dickerson v. Fogg,* 692 F.2d 238, 242–43 (2d Cir.1982).

■ First, unlike the cases identified in this memorandum examining the introduction of former testimony, *e.g., Poland,* 659 F.2d at 986, the testimony presented to the jury in the present case was not the recorded testimony of a witness at the suppression hearing, but was the live testimony of a witness who had testified at the suppression hearing about what she had been told by the victim before that suppression hearing. The victim was not asked questions at the prior hearing on cross examination about her opportunity to observe her assailant or other similar questions. The inherent reliability of such twice removed from the trial courtroom extrajudicial statements seems obviously less than simple prior recorded testimony under oath. Second and most importantly, numerous critical statements of identification made by the declarant on February 17, 1982 were in direct contradiction to earlier statements made by her. On February 11, 1982, the day of the alleged sexual assault, after first telling her mother that no one had touched her (Paper No. 3, Exh. 2, at 1–56–57), Tanya told her mother that she had been hurt in a bathroom by a man with black hair, whose name was Buddy. (*Id.* at M–56–58). At the pre-trial hearing, Tanya stated that the man who assaulted her had hair like the defense attorney, silver gray. (*Id.* at 52). Yet in the photographic identification on February 17, 1982, she identified the defendant, whose nickname is Skip, who has never been known as Buddy, and who has sandy hair, as the "bad man." The State's theory at trial was that Tanya was not attacked in a bathroom but outside in a utilities shed on the school grounds. The State admitted that, in addition to a bath-

room, Tanya had identified several different buildings as the place of the assault. (*Id.* at M–13). Of course, all of these apparent discrepancies might simply be a result of the obvious limitations in observation, expression, and understanding of a five year old. The circumstance of the very tender age of the victim declarant, however, rather than excusing the inconsistencies, strongly decreases the degree to which one can reasonably rely on such extrajudicial statements.

All of these circumstances, considered as a whole, lead this court to conclude that the evidence of the extrajudicial statements and identification by Tanya was so inherently unreliable as to have denied Ellison his Sixth Amendment rights. In short, this court cannot conclude, as the Supreme Court instructs us we must, that there are "particularized guarantees of trustworthiness" in the admitted hearsay at issue here. Without indicia of a high degree of trustworthiness under all the circumstances, the reception of the hearsay evidence was error of a constitutional dimension.

### C. *Harmless Error*

■ In *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), the Supreme Court concluded that constitutional error can be held to be harmless only if the court is able to declare a belief that it was harmless beyond a reasonable doubt. Unlike other cases in which the admission of an improper pre-trial identification was held to be but harmless error, *see, e.g., United States v. Stubblefield,* 621 F.2d 980 (9th Cir.1980); *United States ex rel. Moore v. People State of Illinois,* 577 F.2d 411 (7th Cir.1978); *Wilkins v. Sumner,* 475 F.Supp. 495 (E.D.Va. 1979), the testimony of Detective Alexander about Tanya's extrajudicial identification on February 17, 1982 was the only link between Ellison and the crime. *See Dickerson,* 692 F.2d at 247; *United States v. Johnson,* 452 F.2d 1363 (D.C.Cir.1971). Detective Alexander testified that Tanya identified Ellison as the bad man who stuck her with "a needle." (Paper No. 3, Exh. 2,

at 1–127, 1–132). Ms. O'Brien only testified that Tanya had identified Ellison as "the bad man," (*id.* at 2–16) and another man as "the good man." This latter testimony did not identify the petitioner as a bad man, *because* he sexually assaulted Tanya in February of 1982. Nor do the statements of Tanya to Dr. Fowler remedy this deficiency. Ms. Matthews testified that Tanya told Dr. Fowler only that a man had "stuck a needle in her." Thus, there is no indication in the other testimony before the jury that Ellison is the bad man who assaulted Tanya. Accordingly, the court concludes that the error was not harmless and that the petition of Ervin Devere Ellison pursuant to 28 U.S.C. § 2254 must be granted.

Accordingly, it is this 23rd day of March, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That the Petition for a Writ of Habeas Corpus filed by Ervin Devere Ellison be, and the same is hereby, GRANTED.

2. That the State release the petitioner immediately upon his posting an appropriate bond in this court to assure his presence in State court in the event the State elects to retry him.